Lydia B. CHAMPION, et al.,
Plaintiffs/Appellants,

v.

STATE OF CALIFORNIA, et al.,
Defendants/Appellees.

No. 83–6315.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1984.

Decided July 30, 1984.

Nelson R. Kieff, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for plaintiffs/appellants.

Frank E. Melton, Tuttle & Taylor, Los Angeles, Cal., for defendants/appellees.

Before WRIGHT, FERGUSON and REINHARDT, Circuit Judges.

FERGUSON, Circuit Judge:

The plaintiffs, Lydia Champion and fourteen other public employees, appeal the district court's denial of a preliminary injunction. They sought to enjoin their employer, the State of California, from deducting "fair share fees" from their paychecks and giving the money to their bargaining representative, the California State Employees Association (CSEA). In their underlying suit they challenge the propriety of the union's expenditures under *Abood v. Detroit Board of Education*, 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261 (1977), and *Ellis v. Brotherhood of Railway Clerks,* — U.S. ——, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), and the constitutionality of the state law under which the deductions were made. We affirm.

FACTS

In 1982, effective January 1, 1983, the California legislature amended the State Employer-Employee Relations Act (SEERA) to provide that "[o]nce an employee organization is recognized as the exclusive representative of an appropriate unit, it may enter into an agreement with the state employer providing for organizational security in the form of maintenance of membership or fair share fee deduction." Cal. Gov't Code § 3515.7(a). The state employer is authorized to deduct a membership or fair share fee from the employee's salary or wages. *Id.* § 3515.7(b). The employee organization is required to keep "an adequate itemized record of its financial transactions" and to make available to the state Public Employment Relations Board and to the employees a "detailed written financial report" annually. *Id.* § 3515.7(e).

The statute makes special provisions for "fair share fees," the fees paid by bargaining unit employees who choose not to become members of the employees' association or union. Although the state employer may deduct an amount to equal their "fair share" of the cost of representation and forward it to their representative, the employee has the right to demand and receive from the representative a return of any part of the fee which is spent "either in aid of activities or causes of a partisan political or ideological nature only incidentally related to the terms and conditions of employment, or applied towards the cost of any other benefits available only to members of the recognized employee organization." *Id.* § 3515.8. The statute further provides that the refund shall not reflect or include:

the costs of support of lobbying activities designed to foster policy goals and collective negotiations and contract administration, or to secure for the employees represented advantages in wages, hours, and other conditions of employment in addition to those secured through meeting and conferring with the state employer. The board may compel the recognized employee organization to return that portion of a fair share fee which the board may determine to be subject to refund under the provisions of this section.

The first payroll deduction pursuant to these sections was made on February 1, 1983. All employees were notified of their right to object to and to demand a refund of money used for "partisan political or ideological causes." According to the defendants, since July 1, 1983, CSEA does not wait to refund money deducted from objecting employees' paychecks, but eliminates from the deduction the amount it determines is spent for political or ideological purposes.

Plaintiffs brought suit under 42 U.S.C. § 1983, challenging the constitutionality of sections 3515.7 & 3515.8 under the First and Fourteenth Amendments. Pending fi-

nal resolution, plaintiffs sought a preliminary injunction restraining the deduction and collection of any portion of plaintiffs' wages as fair share fees.

The district court denied the plaintiffs' motion for a preliminary injunction and also denied plaintiffs' motion for class certification and defendants' motion to abstain. Only the denial of the preliminary injunction has been appealed.

ISSUES

1. Did the district court abuse its discretion in denying the preliminary injunction?

2. How does the Supreme Court's recent opinion in *Ellis v. Railway Clerks* affect the result?

DISCUSSION

*Standard of Review*

A grant or denial of a preliminary injunction will be reversed only if the district court relied on an erroneous legal premise or abused its discretion. *Sports Form, Inc. v. UPI, Inc.*, 686 F.2d 750, 752 (9th Cir.1982). "To determine whether there has been an abuse of discretion, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment ....'" *Id.* (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)).

The relevant factors ordinarily considered on a motion for a preliminary injunction are either (1) whether the probability of success on the merits and the possibility of irreparable harm justify an injunction, or (2) whether serious questions are raised and the balance of hardships tips sharply in the movant's favor. *Sports Form, Inc.*, 686 F.2d at 753 (and cases cited therein). The district court considered the proper legal factors in reviewing the motion for a preliminary injunction.

1. Did the District Court Abuse Its Discretion in Denying the Preliminary Injunction?

■ The plaintiffs concede that a state may deduct a "fair share fee" from state employees who are part of a bargaining unit but not members of the bargaining association. *Abood v. Detroit Board of Education, supra.* However, they assert that the scope of the fair share fee as defined in section 3515.8 is beyond the amount permissibly deductible from nonmember employees. The preliminary injunction they sought would have enjoined all deductions taken from the plaintiffs' paychecks pursuant to section 3515.7.

The district court's denial of this injunction is in accord with the Supreme Court's holdings in *Abood v. Detroit Board of Education, supra; Railway Clerks v. Allen*, 373 U.S. 113, 83 S.Ct. 1158, 10 L.Ed.2d 235 (1963); *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961); *Railway Employes' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956). Although the district court conducted the analysis ordinarily applied on motions for preliminary relief, it is clear that under *Allen*, *Street* and *Abood* it would have been error to issue the preliminary injunction.

In a series of cases beginning with *Railway Employes' Department v. Hanson*, 351 U.S. 225, 76 S.Ct. 714, 100 L.Ed. 1112 (1956), the Supreme Court has consistently upheld the constitutionality of statutes authorizing a union shop and the compelled payment of "fair share fees" or dues to the employee representative. *Hanson* involved an attack on the facial constitutionality of section 2, Eleventh, of the Railway Labor Act, 45 U.S.C. § 152, Eleventh. The Court upheld the statute as a valid legislative policy choice, and rejected the arguments that it violated the First Amendment or the Due Process Clause of the Fifth Amendment.

In *International Association of Machinists v. Street*, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961), the Court recognized that funds paid to the union by objecting employees, compelled pursuant to the Railway Labor Act, 45 U.S.C. § 152,

Eleventh, could only be used for limited purposes. The Court held, however, that an injunction against all such compelled payments was unjustified. It said:

> Restraining the collection of all funds from the appellees [objecting employees] sweeps too broadly since their objection is only to the uses to which some of their money is put. Moreover, restraining collection of the funds ... might well interfere with the appellant unions' performance of those functions and duties which the Railway Labor Act places upon them to attain its goal of stability in the industry.

367 U.S. at 771, 81 S.Ct. at 1801. In *Allen,* the Court was even more emphatic. It stated that "lest the important functions of labor organizations under the Railway Labor Act be unduly impaired, *dissenting employees* (at least in the absence of special circumstances not shown here) *can be entitled to no relief until final judgment in their favor is entered.*" 373 U.S. at 120, 83 S.Ct. at 1163 (emphasis added). *See also Abood,* 431 U.S. at 241, 97 S.Ct. at 1802 ("For all the reasons outlined in *Street,* the court was correct in denying the broad injunctive relief requested."); *Dean v. TWA,* 708 F.2d 486 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 490, 78 L.Ed.2d 685 (1983). In light of these opinions and the Court's holding in *Abood* that union security arrangements in public employment do not abridge employee First Amendment or Due Process rights, 431 U.S. at 232, 97 S.Ct. at 1798, the district court was correct in denying preliminary relief.

■ Even if a more narrow injunction could be fashioned under plaintiffs' motion, *see Robinson v. State of New Jersey,* 547 F.Supp. 1297, 1323–24 (D.N.J.1982), there do not appear to be any special circumstances rendering a preliminary injunction appropriate in this case. Defendants state that they have eliminated that portion of the fair share fee which goes to "partisan political or ideological causes only incidentally related to the terms and conditions of employment." Thus, the amount collected no longer includes amounts clearly subject

to refund under the statute. Moreover, unlike the situation in *Robinson, supra,* there has been no argument or showing that CSEA's refund or accounting procedures are "unusable" or "onerous." 547 F.Supp. at 1323.

2. The Effect of the Supreme Court's Opinion in *Ellis v. Railway Clerks.*

■ Plaintiffs challenge the facial constitutionality of section 3515.8, particularly that portion which reserves to the employee representative the right to use fair share fees for certain lobbying activities. In *Ellis v. Railway Clerks,* — U.S. —, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984), the Court, in considering challenges to several types of expenditures, stated:

> [T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit.

104 S.Ct. at 1892. The Court did not consider lobbying expenditures in its opinion, although the district court in *Ellis* had found such expenditures impermissible. *Ellis v. Railway Clerks,* 91 LRRM 2339, 2342–43 (S.D.Cal.1976). Nonetheless, the district court did not abuse its discretion in declining to issue a preliminary injunction on this limited basis. It correctly noted that in *Abood* the Court recognized that in public employment, as contrasted with private employment under the Railway Labor Act at issue in *Ellis,* the line between permissible and impermissible expenditures may be "somewhat hazier." The Court stated:

The process of establishing a written collective-bargaining agreement prescribing the terms and conditions of public employment may require not merely concord at the bargaining table, but subsequent approval by other public authorities; related budgetary and appropriation decisions might be seen as an integral part of the bargaining process.

*Abood,* 431 U.S. at 236, 97 S.Ct. at 1800. The determination of whether certain expenditures are proper depends on the nature of the bargaining process. *See Ellis,* 104 S.Ct. at 1892; *Abood,* 431 U.S. at 236 & n. 33, 97 S.Ct. at 1800 & n. 33.

Section 3515.8 of SEERA, which plaintiffs challenge as impermissibly broad, is based on the understanding that collective bargaining in the public sector requires resort to the legislature on various employment-related questions. *See Abood,* 431 U.S. at 236, 97 S.Ct. at 1800. Section 3517.5 requires that the state employer-employee agreement, or memorandum of understanding, be presented "to the Legislature for determination." Cal.Gov't Code § 3517.5. The expenditure of funds required by the memorandum of understanding is dependent upon legislative approval, as is the implementation of other provisions which may be inconsistent with various state statutes. *See id.* § 3517.6.

Because public employees work for the state, matters which are ordinarily left to direct negotiation in the private sector are covered by statute. For example, grievance adjustment, Cal.Gov't Code § 18714; computation of leave when there is a break in service, *id.* § 19143; the policy of paying female workers on the principle of comparable worth to remedy great discrepancies between male and female workers' salaries, *id.* § 19827.2(a); the notice and hearing procedure when an employee's salary is changed, *id.* § 19828; and the use of hourly or day workers, *id.* § 19830, are provided by statute, but may be changed through negotiation. See generally *id.* § 3517.6 for a list of statutes affecting public employees. These statutes create a status quo from which the bargaining representatives start negotiations for their particular units.

The importance of legislation affecting public employment, enacted in a forum apart from the meet-and-confer sessions authorized by statute, Cal.Gov't Code § 3517, requires that public employee representatives be given broad authority to protect their members' interests before the legislature.

The Court did reject one aspect of the Ninth Circuit decision in *Ellis.* This circuit had held that a rebate plan adequately protected the nonmembers' right to avoid contributing to objectionable political purposes. *Ellis v. Brotherhood of Railway Clerks,* 685 F.2d 1065, 1069 (9th Cir.1982). The Supreme Court rejected this approach, holding that once the amount of unauthorized expenditures has been determined, that amount must be deducted from the fair share fee. It held that a rebate scheme does not adequately protect the nonconsenting employees' rights. *Ellis,* 104 S.Ct. at 1889–90.

The *Ellis* holding does not determine the validity of the California statute authorizing a fair share deduction nor the disposition of this appeal. In this case, we face the problems that *Allen* and *Street* recognized in considering broad preliminary relief. In contrast, *Ellis* was decided on a fully developed record and controls only the remedy after a final judgment on the merits. *See Allen,* 373 U.S. at 120, 83 S.Ct. at 1162. Moreover, as the rebate is a separate and distinct part of the California scheme, its invalidity should not affect the constitutionality of the statute as a whole. Nor would it affect any voluntarily adopted procedure such as CSEA has described whereunder the Association forgoes the initial collection of the amounts that it might otherwise be required to rebate under the statute.

CONCLUSION

The district court order denying the motion for a preliminary injunction is affirmed.