**NEW PRAIRIE CLASSROOM TEACHERS ASSOCIATION, Appellant,**

v.

**Susan STEWART, et al., Appellees.**

**No. 3–1184A330.**

Court of Appeals of Indiana, Third District.

Jan. 22, 1986.

Rehearing Denied March 26, 1986.

expenses until such payments were discontinued by her father.

Richard J. Darko, Janet C. Knapp, Bayh, Tabbert & Capehart, Indianapolis, Patrick E. Donoghue, Sweeney, Winski, Dabagia & Donoghue, Michigan City, for appellees.

STATON, Presiding Judge.

The New Prairie Classroom Teachers Association (NPCTA) filed thirty-seven small claims actions, consolidated for trial, to collect a representation fee from teachers who were not dues-paying members of NPCTA.[1] The trial court found that the clause in the teachers' collective bargaining agreement authorizing such a fee was unenforceable under the Certificated Educational Employee Bargaining Act (CEEBA), but on appeal to this Court the agreement was upheld. *New Prairie Classroom Teachers Association v. Stewart* (1983), Ind.App., 460 N.E.2d 149. The cause was remanded and judgment was entered against each teacher in the amount of $190.16. Appealing from this judgment, teachers raise several issues which we consolidate and restate as follows:

I. Whether the trial court erred in finding that the representation fee should include reimbursement to the Indiana State Teachers Association (ISTA) and the National Education Association (NEA);

II. Whether the trial court erred in calculating the representation fee.

Affirmed.

## I.

### Reimbursement to ISTA and NEA

NPCTA, which is affiliated with ISTA and NEA, is the recognized exclusive representative of teachers employed by the New Prairie United School Corporation (school board). NPCTA and the school board executed a collective bargaining agreement to run from July 1, 1980, through June 30, 1983, which provided in part:

"*Paragraph 1.*

The Board and Association agree that all members of the bargaining unit who are not also members of the Association have an obligation to pay a representation fee to the Association, including the Indiana State Teachers Association and the National Education Association.

*Paragraph 2.*

By October 1 of each year, the Association shall provide the Board with a list of bargaining unit members who are not also Association members, and the Board shall request each person to submit an original individual enrollment form, within a reasonable time. Upon return of such signed form to the Board, the Board will deduct the representation fee in 22 equal installments from the payroll of each person who submits an authorization. Persons who refuse to sign an authorization form or who revoke an executed form have a continuing enforceable obligation to pay the representation fee directly to the Association; however, the employer shall be under no obligation whatsoever to enforce the terms of this Section. (4.6).

*Paragraph 3.*

The Association recognizes that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities of the Association unrelated to collective bargaining, contract administration, and grievance adjustment or unrelated to its duties as exclusive bargaining representative.

*Paragraph 4.*

The parties agree that the provisions of this Article (IV) will not be enforced against any person who initiates proceedings challenging the legality of this Article, or who is a party thereto, pending final disposition of such proceedings, except that the representation fee may be collected by the Board, and held in escrow, provided such employee so consents.

*Paragraph 5.*

The Association, including the local, the Indiana State Teachers Association and

---

**1.** One of the 37 teachers, Rex Thomas, died and was dismissed prior to this appeal.

the National Education Association agree to 'hold harmless' the New Prairie United School Corporation, its School Board, employees, agents and assigns, as to all claims that may arise in litigation resulting from the implementation of this provision or attempted implementation. Said Associations agree to pay all costs of such litigation, including court costs, attorney fees, judgments, penalties and interest. Prior to performance by the employer of any obligation it may have under this Article, the Employer may demand such written security, bonds, or assurances, it deems reasonable, that said Associations will comply with this section, and said Associations shall agree to execute same."

The teachers involved in this appeal refused to authorize payroll deduction or otherwise pay representation fees to NPCTA. The trial court ordered each teacher to pay a fee of $190.16, to be distributed as follows:

| | |
|---|---|
| NPCTA: | $ 20.00 |
| ISTA: | 128.45 |
| NEA: | 41.71 |

The teachers argue that it was error to find that NPCTA had been elected exclusive representative in its affiliated status, because only NPCTA could be the teachers' exclusive representative. It has never been claimed that ISTA and NEA are co-exclusive representatives of the teachers. The teachers' real complaint is that ISTA and NEA receive a portion of their representation fee, because the organizations are not exclusive representatives, and because they allegedly provided no collective bargaining services to the teachers during the term for which payment is being sought.

■ We must note, first, that the collective bargaining agreement, which was upheld by this Court in the initial appeal of this cause, provides at Paragraph 1 that the representation fee shall include payments to ISTA and NEA. A similar agreement and fee distribution plan was enforced in *Fort Wayne Educ. Ass'n, Inc. v. Goetz* (1982), Ind.App. 443 N.E.2d 364. As

to the teachers' allegation that no collective bargaining services were provided, one purpose of these payments was to secure the availability of services from these organizations. As the United States Supreme Court has recognized,

"[t]he tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. See *Street*, 367 U.S., at 760, 81 S.Ct., at 1795. The services of lawyers, expert negotiators, economists, and a research staff, as well as general administrative personnel, may be required."

*Abood v. Detroit Bd. of Education* (1977), 431 U.S. 209, 221, 97 S.Ct. 1782, 1792, 52 L.Ed.2d 261. Were NPCTA to hire local lawyers, negotiators or researchers, there would be little dispute that they could charge a fair share of the cost to the non-member teachers. Instead, they have chosen to pay a fixed, yearly amount for the continued availability of such services. The teachers cannot force NPCTA to abandon this approach, nor should they be allowed to benefit from the services of ISTA or NEA without paying a fair share of the cost of their continued availability.

## II.

### Representation Fee

■ This Court, on the initial appeal of this cause, upheld the collective bargaining agreement requiring payment of a representation fee to NPCTA, finding it to be constitutional and authorized by Indiana statutes. *Stewart, supra*, 460 N.E.2d at 149. *See also Goetz, supra*, 443 N.E.2d 364. The United States Supreme Court has long recognized that all employees who benefit from the work of an elected bargaining representative may be required to pay their fair share of the costs. *Railway Employees' Department v. Hanson* (1956), 351 U.S. 225, 238, 76 S.Ct. 714, 721, 100 L.Ed. 1112. Employees may not, however,

be required to pay for political or ideological activities to which they object. *Abood, supra,* 431 U.S. at 236–38, 97 S.Ct. at 1800–01. The test for determining whether expenses are chargeable to objecting employees was recently restated in *Ellis v. Broth. of Ry., Airline and S.S. Clerks* (1984), 466 U.S. 435, 104 S.Ct. 1883, 1892, 80 L.Ed.2d 428:

> "[T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit."

In Paragraph 3 of its collective bargaining agreement NPCTA acknowledges that objecting teachers should not be forced to pay for political or ideological activities "unrelated to collective bargaining, contract administration, and grievance adjustment or unrelated to its duties as exclusive bargaining representative." The representation fee which the trial court ordered the teachers to pay is less than the amount paid by NPCTA members: ISTA's share was reduced by $4.55, and NEA's share was reduced by $3.29. These reductions reflect the proportion of each organization's budget which was allocated for non-chargeable political or ideological activities, according to internal estimates.

■ The teachers argue that the method for calculating their representation fee should be a pro rata share of the amount actually spent on collective bargaining activities, with NPCTA required to prove such amount. The United States Supreme Court has not gone so far. The formula which the trial court used was suggested by the Supreme Court itself. *International Ass'n of Machinists v. Street* (1961), 367 U.S. 740, 774–75, 81 S.Ct. 1784, 1802–03, 6 L.Ed.2d 1141. Last year in *Ellis* the Court reviewed a rebate plan in which a proportional amount was refunded to objecting employees at the end of the year, after political and ideological expenditures had been calculated. While the Court found the rebate plan itself inadequate in that it constituted an involuntary loan of the full amount until the amount of the refund was determined, it did not disapprove of the method of calculation. *Ellis, supra,* 104 S.Ct. at 1889–90. It is true that the bargaining representative has the burden of proving the proportion of its funds which are expended for political or ideological purposes, but absolute precision is not expected or required. *Brotherhood of Railway & S.S. Clerks, etc. v. Allen* (1963), 373 U.S. 113, 122, 83 S.Ct. 1158, 1163, 10 L.Ed.2d 235. Nothing in the Supreme Court's decisions suggests that a union should be required to prove its exact expenditures for collective bargaining purposes.

■ The teachers cite a 7th Circuit case, *Hudson v. Chicago Teachers Union Local No. 1* (1984), 743 F.2d 1187, *cert. granted,* — U.S. ——, 105 S.Ct. 2700, 86 L.Ed.2d 716 (U.S.1985), to support their suggested method of calculation. In *Hudson,* non-member teachers brought suit under 42 U.S.C. § 1983, challenging the union's procedure for determining their representation fee. The school board in *Hudson* deducted the fee from non-member teachers' salaries without the teachers' authorization, and the union controlled the review procedures, including selection of an arbitrator. The 7th Circuit found this procedure to be inadequate, and wrote that the procedure should reasonably ensure that no part of the representation fee is used for any activities unrelated to the union's collective bargaining responsibilities. *Id.* at 1194. *Hudson* does not provide the support the teachers seek. The school board in this case could not withhold the representation fee from a teacher's salary without his authorization,

nor could NPCTA enforce its right to the fee againsta teacher who initiated a legal challenge to it, pending the final disposition of the challenge. The teachers' rights have been adequately safeguarded. The trial court did not err in basing the representation fee on regular dues less an amount spent on political or ideological activities unrelated to NPCTA's duties as an exclusive representative.

The teachers also argue that the evidence did not support the judgment against them. NPCTA, ISTA, and NEA must prove the proportion of their total expenditures which were chargeable to objecting employees. The teachers challenge certain expenditures made by each organization and argue that the organizations have failed to meet their burden of proof. In reviewing the sufficiency of the evidence, this Court will not reweigh the evidence or judge the credibility of witnesses. We will consider the evidence most favorable to the prevailing party, together with all reasonable inferences to be drawn therefrom, to determine whether there is evidence of probative value to support the judgment. *Uebelhack Equipment, Inc., v. Garrett Bros.* (1980), Ind.App., 408 N.E.2d 136, 138.

### A. ISTA & NEA

ISTA's portion of the representation fee which each teacher was ordered to pay was $128.45, or $4.55 less than the regular dues of $133. NEA's portion was $41.71, or $3.29 less than its regular dues of $45. The amount deducted from the regular dues corresponds to the amount of each group's total budget devoted to political or ideological activities.

The teachers object to the expenditures of ISTA and NEA for lobbying governmental agencies other than the school board. They argue that these activities were not related to collective bargaining and thus are not chargeable to them. The United States Supreme Court has recognized the somewhat more expansive role of the bargaining representative in the public employment sector, and the consequent difficulty in distinguishing between chargeable and non-chargeable expenses. In *Abood, supra,* 431 U.S. at 236, 97 S.Ct. at 1800, the Court stated:

"The process of establishing a written collective-bargaining agreement prescribing the terms and conditions of public employment may require not merely concord at the bargaining table, but subsequent approval by other public authorities; related budgetary and appropriations decisions might be seen as an integral part of the bargaining process."

The Court did not have the issue of lobbying expenses before it.

■ Lobbying expenses have been the subject of two recent federal court of appeals decisions, and were held chargeable in both cases. *See Champion v. State of California* (1984), 9th Cir., 738 F.2d 1082, *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 1230, 84 L.Ed.2d 367; *Robinson v. State of New Jersey* (1984), 3d Cir., 741 F.2d 598, *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 1228, 84 L.Ed.2d 366. The *Champion* Court recognized that many matters in public employment are covered by statute, and that "[t]hese statutes create a status quo from which the bargaining representatives start negotiations for their particular units." *Champion, supra,* 738 F.2d at 1086. Indiana statutes such as the minimum salary schedules, Ind.Code 20–6.1–5–1, provide a similar starting point. There was also evidence that nearly 60% of the funding for local education in 1980–81 came from the state and federal governments. The *Robinson* Court considered the inability to lobby to be a severe handicap to a public employee representative in performing its duties. *Robinson, supra,* 741 F.2d at 609.[2] We agree with both these Courts that lobbying efforts germane to the union's duties as an exclusive representative are chargeable to objecting employees.

---

**2.** Appellants also cite *Beck v. Communications Workers of America,* 120 L.R.R.M. (BNA) 2957 (4th Cir.1985), which criticized *Robinson* in a footnote. However, *Beck* did not involve public employees.

There was evidence at trial that ISTA and NEA, through Unified Services (UniServ), provided other more direct assistance to NPCTA in performing its duties as the teachers' exclusive representative. They provided training and assistance in the area of collective bargaining, as well as other areas. Under IC 20–7.5–1–5, NPCTA is required to discuss with the school board such topics as curriculum development and textbook selection, and UniServ provided its expertise in these areas. The political activity rebate policies of both organizations were before the trial court, and Dale Harris, Executive Director of ISTA, testified in detail concerning the procedures ISTA used to segregate chargeable and non-chargeable expenses. There was sufficient evidence that the payments to ISTA and NEA were "necessarily or reasonably incurred for the purpose of performing [NPCTA's] duties [as] an exclusive representative." *Ellis, supra,* 104 S.Ct. at 1892. The trial court did not err in ordering the teachers to reimburse ISTA and NEA.

### B. NPCTA

NPCTA's portion of the representation fee is $20, the same amount as its regular dues. NPCTA President Linda Miller testified that no money was spent on political or ideological activities. The teachers challenge certain of NPCTA's expenses and argue that this amount should be reduced.

First, the teachers argue that expenditures for attending ISTA meetings were not chargeable to them. We have already discussed the importance to NPCTA of its affiliation with ISTA; attendance at these meetings was a way of taking full advantage of that relationship. There was evidence that these meetings provided information and training in collective bargaining techniques and other areas pertinent to the operation of a local association. It was not error to find that expenditures for attending these meetings could be charged to objecting employees.

Finally, the teachers challenge what they allege to be organizing expenditures. In *Ellis, supra,* the Supreme Court specifically determined that organizing expenses were not chargeable to objecting employees. *Ellis,* 104 S.Ct. 1894–95. NPCTA President Miller testified that NPCTA had no out-of-pocket expenses for its membership drive for the 1980–81 term. NPCTA used the same forms, provided by ISTA, to sign up new members and to renew current members.[3] Volunteers gave the forms to individual teachers to sign. There was sufficient evidence to find that NPCTA was entitled to its entire $20 fee.

We affirm.

GARRARD and HOFFMAN, JJ., concur.

---

**3.** ISTA Executive Director Dale Harris testified that ISTA used a special formula to exclude from its chargeable expenses the cost of signing up new members.