Helen ABELS, et al.,
Defendants-Appellants,

v.

MONROE COUNTY EDUCATION ASSOCIATION, Plaintiff-Appellee.

No. 1–385A66.

Court of Appeals of Indiana,
First District.

Feb. 18, 1986.

---

David T. Bryant, Nat. Right to Work Legal Defense Foundation, Inc., Springfield, Va., Ronald L. Chapman, Cotner, Mann & Chapman, Bloomington, for defendants-appellants.

Richard J. Darko, Janet C. Knapp, Tabbert & Capehart, Indianapolis, Edward F. McCrea, McCrea & McCrea, Bloomington, for plaintiff-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Appellants, non-member [1] certificated employees of the Monroe County Community School Corporation, appeal Findings of Fact and Conclusions of Law entered by the Monroe Superior Court on January 4, 1985, in favor of the appellee, Monroe County Education Association. We affirm.

## FACTS

The Monroe County School Corporation (School Corporation) and the Monroe County Education Association (MCEA) entered into a collective bargaining agreement for the 1981–1982 and 1982–1983 school years. In part, that agreement provided for the payment of a fair share representation fee by the School Corporation's teachers who were not members of MCEA. The agreement stated:

"Section 2—Representation Fee

a) *All members of the bargaining unit who are not also members of the Association have an obligation to pay a Representation Fee to the Association,*

---

1. In the context of this appeal, non-member refers to those teachers who belong to the bargaining unit but who have chosen not to join the exclusive representative.

*including the Indiana State Teachers Association and the National Education Association.* The Representation Fee shall be the unified dues of the Associations less an amount determined by the procedures provided for in subsection c below.

. . . . .

c) *The Association recognizes that no member of the bargaining unit should be forced to contribute financial support to political or ideological activities of the Association unrelated to the collective bargaining, contract administration, and grievance adjustment, or unrelated to its duties as exclusive bargaining representatives.* Consequently, the Association agrees to adopt an Internal Association remedy providing for a pro rata refund of that portion of the Representation Fee which is unrelated.

. . . . .

f) The provisions of Article 2.08, Section 2, will not be enforced against any person who initiates proceedings challenging the legality of this article, pending final disposition of such proceedings, except that the Representation Fee may be collected and the Representation Fee of the person will be held in escrow. [Emphasis added.]"

Record at 175. The validity of this clause was challenged in *Hollingsworth v. Monroe County Community School Corporation and Monroe County Education Association* (June 20, 1983), Brown Circuit Court, Cause No. 81 C 308, a class action brought by the appellants. There, on the basis of this court's opinion in *Fort Wayne Education Association v. Goetz* (1982), Ind.App., 443 N.E.2d 364, *trans. denied,*

the Brown Circuit Court concluded that the challenged clause violated neither the United States nor Indiana constitutions. The court specifically withheld judgment on what amount was properly due under the representation fee clause however. Neither party appealed that judgment.

During the 1981–1982 school year, MCEA sought a total fair share representation fee of $204.49 from each full-time teacher who was not a member of the union. That amount included $20.00 for MCEA, $140.91 for the Indiana State Teachers Associations (ISTA), and $43.58 for the National Education Association (NEA).[2] For the 1982–1983 school year, MCEA sought a representation fee of $226.22. This amount included $22.00 for MCEA, $155.73 for ISTA, and $48.49 for NEA.[3] The appellants, however, refused to pay any representation fees. Consequently, MCEA initiated this action to collect the fair share representation fee alleged to be due. Following a bench trial, the Monroe Superior Court found for MCEA and entered judgment against the appellants. Appellants subsequently perfected this appeal asserting a number of errors. We will develop additional facts below.

## ISSUES

Appellants assert a number of issues in their briefs. Essentially, however, this appeal raises two issues:

1. Whether the trial court erred when it determined that the fair share representation fee could include payments to ISTA and NEA.

---

**2.** These amounts reflect the dues each organization charges its members less a "rebate" for political, ideological, and organizational expenses unrelated to collective bargaining activities. MCEA's representation fee for the 1981–1982 school year is equal to the amount of dues paid by union members. It deducted nothing for political, ideological, or organizational expenses. ISTA, however, determined that $4.09 of their $145.00 dues was not chargeable to non-members. Likewise, NEA deducted $4.42

from its dues of $48.00 to reflect expenses not assessable against non-members.

**3.** The representation fee for MCEA once again equaled the amount of dues paid by members. Both ISTA and NEA, however, "rebated" a portion of their dues. ISTA found that $4.27 of its $160.00 dues was not chargeable to non-members. NEA determined that $4.51 of its normal $53.00 dues was not chargeable as part of a fair share representation fee.

2. Whether the trial court correctly calculated the amount of the fair share representation fee.

### DISCUSSION AND DECISION

*Issue One*

■ Although far from clear, appellants initially appear to assert that MCEA may not collect any representation fee for either ISTA or NEA. Their argument seems to be two-fold. First, they contend that non-members may only be required to pay a fair share representation fee to the bargaining unit's exclusive representative. The argument continues, in essence, that MCEA alone was qualified to act as the exclusive representative. They assert that neither ISTA nor NEA were entitled to act in that capacity. Hence, they conclude, only the exclusive representative, MCEA, could demand a representation fee from non-members. This precise argument has been uniformly rejected by all courts which have considered it however.

We first must note that there is no question that MCEA alone was elected as the exclusive representative for the bargaining unit. In fact, no one has ever contended that either ISTA or NEA are co-exclusive representatives with MCEA. Contrary to appellants' arguments, however, it is clear that MCEA was elected exclusive representative in its status as an affiliate of both ISTA and NEA. The real issue then is whether a member of the bargaining unit, who has not joined the union, may be required to pay any representation fees to the exclusive representative's state or national affiliate organizations. We believe it clear that such fees can be demanded.

In the seminal case in this area of the law, *Abood v. Detroit Board of Education* (1977), 431 U.S. 209, 97 S.Ct. 1782, 52 L.Ed.2d 261, the United States Supreme Court recognized the wide range of activities an exclusive representative may be called upon to perform. There, the Court stated:

"The designation of a union as exclusive representative carries with it great

responsibilities. The tasks of negotiating and administering a collective-bargaining agreement and representing the interests of employees in settling disputes and processing grievances are continuing and difficult ones. They often entail expenditure of much time and money. See, [*International Ass'n of Machinists v.*] *Street*, 367 U.S. [740], at 760, 81 S.Ct. [1784], at 1795 [6 L.Ed.2d 1141]. The services of lawyers, expert negotiators, economists, and research staff, as well as general administrative personnel, may be required."

*Abood*, at 221, 97 S.Ct. at 1792, 52 L.Ed.2d at 275. State and national organizations, particularly in the area of education, have traditionally supplied these and other services to assist their local affiliates in carrying out collective bargaining responsibilities. Such a network spreads the costs of acquiring these services, thus, facilitating collective bargaining activities even for the smaller bargaining units. If a local organization were required to employ its own staff of lawyers, expert negotiators, economists, and researchers, as the appellants' argument necessarily suggests, the costs of collective bargaining could quickly become prohibitive. We have found no support for such a result.

In a recent opinion of this court, *New Prairie Classroom Teachers Ass'n. v. Stewart* (1986), Ind.App., 487 N.E.2d 1324 (appeal after remand) (hereinafter referred to as *Stewart II* ), authored by Judge Staton, we expressly rejected an argument identical to the one advanced by the appellants. *Stewart II*, at 1327. Additionally, as Judge Staton pointed out in *Stewart II*, similar representation fee clauses in collective bargaining agreements requiring payments to both ISTA and NEA, previously have been upheld by this court. *See New Prairie Classroom Teachers Ass'n. v. Stewart* (1983), Ind.App., 460 N.E.2d 149, 151; *Fort Wayne Education Ass'n. v. Goetz* (1982), Ind.App., 443 N.E.2d 364, 373, *trans. denied.* Other jurisdictions have also refused to recognize appellants' arguments. In *Cumero v. Public Employment Relations Board* (1985), 167 Cal.App.3d

131, 213 Cal.Rptr. 326, *pet. for review granted* 215 Cal.Rptr. 852, 701 P.2d 1170, the California Court of Appeal rejected non-members' contentions that they could not be forced to pay a fair share representation fee to state or national affiliate organizations because they were not the exclusive representative of the bargaining unit. *Id.* at 148, 213 Cal.Rptr. at 338. The California court found that such a rule would seriously undermine the common practice of affiliation, a result for which the court found no support. Clearly, neither do we.

Appellants also have failed to justify the second prong of their attack on the representation fees MCEA sought for ISTA and NEA. This argument is essentially offered as an alternative to the first. They assert that if they are required to pay any monies to either ISTA or NEA, they should be required to pay only a pro rata portion of the costs actually expended by ISTA and NEA in assisting MCEA in carrying out its collective bargaining responsibilities with the School Corporation. They argue, in effect, that they should not be required to pay any costs expended by ISTA or NEA in providing collective bargaining services to *other* exclusive representatives. This view is far too narrow.

Judge Staton rejected this position in *Stewart II.* At 1327. As we noted above, there are numerous services which an exclusive representative would need to employ in order to effectively fulfill its collective bargaining responsibilities. MCEA has chosen to pay fixed yearly fees to ISTA and NEA in return for continuous availability of a wide range of services. Certainly MCEA could have determined that another method of acquiring these collective bargaining services was more advantageous. However, it did not. We perceive no basis which would permit non-members to force MCEA to abandon the approach it has selected as most effective, short of an election to oust MCEA as the bargaining unit's exclusive representative. Therefore, assuming that the fair share representation fees sought for ISTA and NEA are not otherwise objectionable, non-members may be required to pay them.

*Issue Two*

The second issue raised by appellants questions the amount of the fair share representation fee the trial court found them liable for. Appellants initially challenge the method employed by the trial court to calculate the representation fee. They assert that the trial court calculated the fee non-members were required to pay by subtracting the costs of political, ideological, organizing, and legal expenses unrelated to collective bargaining from the amount of dues members were required to pay. Appellants contend that the proper measure is MCEA's actual cost of bargaining, contract administration, grievance adjustment, and the performance of other statutory duties *vis-a-vis* the Monroe County School Corporation. They also challenge a number of specific expenditures which MCEA sought to include in the fair share representation fee. Because these two arguments are closely related, we discuss them together below.

■ It is clear that all employees in a bargaining unit who reap the benefits of an elected exclusive representative's collective bargaining efforts may be required to pay their fair share of the costs of those efforts. *Railway Employes' Dept. v. Hanson* (1956), 351 U.S. 225, 238, 76 S.Ct. 714, 721, 100 L.Ed. 1112, 1134. Such a rule prevents "free riders"—those employees in the bargaining unit who would refuse to join the exclusive representative and yet enjoy the fruits of its collective bargaining activities. *Abood*, 431 U.S. at 222, 97 S.Ct. at 1792–93, 52 L.Ed.2d at 276. Those who have chosen not to join the exclusive representative may not be compelled, however, to support its political or ideological activities which are not germane to collective bargaining. *Abood*, at 235, 97 S.Ct. at 1799–1800, 52 L.Ed.2d at 284; *Brotherhood of Railway and Steamship Clerks v. Allen* (1963), 373 U.S. 113, 122, 83 S.Ct. 1158, 1164, 10 L.Ed.2d 235, 242; *International Ass'n of Machinists v. Street* (1961), 367 U.S. 740, 768–69, 81 S.Ct. 1784, 1800, 6 L.Ed.2d 1141, 1161. The difficult problem

comes in drawing the line between those expenses which are clearly germane to collective bargaining and hence assessable against non-members, and those expenses which are clearly for political or ideological purposes unrelated to collective bargaining and, therefore, not assessable. *Abood,* 431 U.S. at 236, 97 S.Ct. at 1800, 52 L.Ed.2d 285. This line may be even harder to define where, as is the case here, the employer is a governmental entity. *Id.*

■ Drawing upon its earlier decisions in *Street, Allen,* and *Abood,* the United States Supreme Court recently attempted to clarify further the line between assessable and non-assessable expenses. In *Ellis v. Brotherhood of Railway, Airline and Steamship Clerks* (1984), 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428, the court stated:

> "[T]he test must be whether the challenged expenditures are necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees in dealing with the employer on labor-management issues. Under this standard, objecting employees may be compelled to pay their fair share of not only the direct costs of negotiating and administering a collective-bargaining contract and of settling grievances and disputes, but also the expenses of activities or undertakings normally or reasonably employed to implement or effectuate the duties of the union as exclusive representative of the employees in the bargaining unit."

*Ellis,* at ——, 104 S.Ct. at 1892, 80 L.Ed.2d at 442.[4] The *Ellis* opinion also reaffirmed the Court's long standing position that the exclusive representative bears the burden of establishing, by a preponderance of the evidence, what proportion of their expenditures were properly assessable against non-members. *Ellis,* at ——, 104 S.Ct. at 1897, 80 L.Ed.2d at 447–48, n. 15. *See also Allen,* 373 U.S. at 122, 83 S.Ct. at 1164, 10

L.Ed.2d at 24. The Court quickly added, however, that, considering the difficult accounting problems which were likely to arise, mathematical exactitude could neither be expected nor required. *Ellis,* 466 U.S. at ——, 104 S.Ct. at 1897, 80 L.Ed.2d at 447–48, n. 15 *quoting Allen,* 373 U.S. at 122, 83 S.Ct. at 1163, 10 L.Ed.2d at 241. With these basic parameters set, we now proceed to consider appellants' specific arguments.

Appellants proposed method of calculating the fair share representation fee results from a far too narrow reading of the test announced in *Ellis.* That test is useful only in determining what expenses are properly assessable against non-members. The appropriate formulation is the one suggested by earlier Supreme Court decisions and applied by the trial court below. That method defines a fair share representation fee as dues less a pro rata share of non-assessable expenses. *Allen,* at 121, 83 S.Ct. at 1163, 10 L.Ed.2d at 241; *Street,* 367 U.S. at 774–75, 81 S.Ct. at 1803, 6 L.Ed.2d at 1164; *Stewart II,* at 1328. The formulation was tacitly reaffirmed in *Ellis. See Ellis,* 466 U.S. at ——, 104 S.Ct. at 1889–90, 80 L.Ed.2d at 439; *Stewart II,* at 1328. Appellants' reliance on *Hudson v. Chicago Teachers Union* (7th Cir.1984), 743 F.2d 1187, *cert. granted* (1985), —— U.S. ——, 105 S.Ct. 2700, 86 L.Ed.2d 716, is misplaced. Nowhere in that opinion does the court suggest that appellants' proposed method of calculation is the appropriate one. *Stewart II,* at 1328. If we were to adopt appellants' formulation, we would in effect be requiring the mathematical and accounting exactitude which the Supreme Court has ruled is neither to be required nor expected. *Ellis,* 466 U.S. at ——, 104 S.Ct. at 1897, 80 L.Ed.2d at 447–48, n. 15 *quoting Allen,* 373 U.S. at 122, 83 S.Ct. at 1163, 10 L.Ed.2d at 241. *See also Stewart II,* at 1328. Our own extensive review of

---

**4.** *Ellis* involved judicial construction of the Railway Labor Act (RLA), 45 U.S.C. section 152, Eleventh (1981), which permits common carriers to enter into union shop agreements. *See Ellis,* 466 U.S. at ——, 104 S.Ct. at 1887, 80 L.Ed.2d at 436. However, it appears that the *Ellis* decision will have much broader application. *See Hudson v. Chicago Teachers Union* (7th Cir.1984), 743 F.2d 1187, *cert. granted* (1985), —— U.S. ——, 105 S.Ct. 2700, 86 L.Ed. 716 (applying *Ellis* to union shop agreement between school board and teachers union).

the relevant authority reveals no support for appellants' proposed formulation.

■■■ We turn next then to a consideration of the specific expenditures challenged by the appellants. In so doing, we must be mindful of our limited scope of review. We presume that the trial court correctly applied the law and committed no error. It is the appellants' burden then to demonstrate reversible error. *Dicus v. Ripley County Bank* (1984), Ind.App., 471 N.E.2d 1257, 1259, *trans. denied; Matter of VMS* (1983), Ind.App., 446 N.E.2d 632, 637. Where, as is the case here, the trial court enters specific findings of fact and conclusions of law, we will not set them aside unless they are clearly erroneous. *Litzelswope v. Mitchell* (1983), Ind.App., 451 N.E.2d 366, 369. The judgment controls as to any issue not covered by the findings and must be upheld if sustainable on any theory. *Baker v. Compton* (1983), Ind. App., 455 N.E.2d 382, 385. In reviewing the judgment, we will neither reweigh the evidence nor judge the credibility of the witnesses who provided it. Rather, we will consider only the evidence most favorable to the judgment together with all inferences which may be reasonably drawn therefrom. If, from this standpoint, there is evidence of probative value to support the trial court's judgment, it will not be disturbed. *Uebelhack Equipment, Inc. v. Garrett Brothers, Inc.* (1980), Ind.App., 408 N.E.2d 136, 138.

## MCEA EXPENDITURES

### *ISTA and NEA CONVENTIONS*

■■■ Appellants challenge certain expenditures incurred by MCEA in sending representatives to annual conventions and workshops held by its affiliate organizations, ISTA and NEA. As the Supreme Court pointed out in *Ellis*, however, such conventions are essential to the effective discharge of the exclusive representative's collective bargaining responsibilities. *Ellis*, 466 U.S. at ——, 104 S.Ct. at 1892–93, 80 L.Ed.2d at 442. It is at such meetings that exclusive representatives receive the training in leadership techniques, contract negotiation, and grievance procedures which benefit all teachers. Therefore, as the Supreme Court concluded in *Ellis*, these expenses are clearly assessable against non-members. *Id.*

## NEW LEADER DINNER

■■■ Appellants next attack expenses related to MCEA's annual "New Leader Dinner." This function was used to educate MCEA's building representatives in the terms of the collective bargaining agreement. The building representatives were then better equipped to assist all teachers in protecting their rights under the agreement on a day-to-day basis. Clearly, this is an assessable expense under the *Ellis* test.

## NEW TEACHER LUNCHEON

■■■ MCEA held a luncheon each year for all new teachers. This luncheon permitted MCEA to inform the new teachers of their rights and obligations under the collective bargaining agreement. It is clear from the record that MCEA made no attempt to encourage new teachers attending the luncheon to join it. Thus, it is not an organizing expense of the type determined by *Ellis* to be non-assessable. *Ellis*, at ——, 104 S.Ct. 1894–95, 80 L.Ed.2d at 444–45. We must conclude, rather, that the cost of the "New Teacher Luncheon" was assessable against non-members.

## LOBBYING ACTIVITIES

Appellants also challenge two expenditures which can best be described as lobbying activities. First, appellants question an expenditure made by MCEA to send a representative to "Solidarity Day" in Washington, D.C. This was apparently a march on the Capitol by various groups, including NEA, to protest numerous cuts in federal spending for social programs. It appears from the record that the MCEA representative participated in the march to protest cuts in educational programs and the proposed dismantling of the Department of Education. Secondly, appellants take issue with an expenditure of funds by MCEA for

its own lobbying efforts. MCEA's lobbying arm, the legislative committee, lobbied the Indiana General Assembly on such issues as "Operation Prime Time" and teacher retirement benefits. Challenges similar to those raised here by appellants, however, have already been rejected. *See e.g. Stewart II*, at 1329.

The Supreme Court has provided little guidance in this area. The court's opinion in *Ellis* did not consider expenditures for lobbying activities. In its earlier *Abood* decision, however, the Court intimated that, where the employer is a governmental entity, a certain amount of the exclusive representative's lobbying expenses would be assessable against non-members. The Court stated:

"The process of establishing a written collective-bargaining agreement prescribing the terms and conditions of public employment may require not merely concord at the bargaining table, but subsequent approval by other public authorities; related budgetary and appropriations decisions might be seen as an integral part of the bargaining process."

*Abood*, 431 U.S. at 236, 97 S.Ct. at 1800, 52 L.Ed.2d at 285. Unfortunately, the Court did not have the issue of lobbying expenses directly before it and, therefore, did not ultimately resolve the issue.

Two recent federal circuit court of appeals decisions have, however, had occasion to consider lobbying expenses. *See Robinson v. State of New Jersey* (3d Cir.1984), 741 F.2d 598, *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 1228, 84 L.Ed.2d 366, (construing New Jersey statute); *Champion v. State of California* (9th Cir.1984), 738 F.2d 1082, *cert. denied* (1985), —— U.S. ——, 105 S.Ct. 1230, 84 L.Ed.2d 367 (construing California statute). Both courts upheld the use of representation fees for lobbying activities against non-members First Amendment challenges. In each case, the courts recognized that traditional areas of collective bargaining are largely dependent on and sensitive to legislative action. *Robin-*

*son*, at 609; *Champion*, at 1086. The *Robinson* court concluded, therefore, that:

"So long as the lobbying activities are pertinent to the duties of the union as a bargaining representative and are not used to advance the political and ideological positions of the union, lobbying has no different constitutional implication from any other form of union activity that may be financed with representation fees."

*Robinson*, at 609. The same result is required here.

Under Indiana's Certificated Educational Employee Bargain Act (CEEBA),[5] the exclusive representative is required to negotiate salary, wages, hours, fringe benefits, and grievance procedures. Indiana Code section 20–7.5–1–4 (Burns 1985). It is also required to discuss a variety of subjects with the school employer including: working conditions; curriculum development and revision; textbook selection; teaching methods; selection, assignment or promotion of personnel; student discipline; expulsion or supervision of students; pupil-teacher ratio; class size; and, budget appropriations. Indiana Code section 20–7.5–1–5 (Burns 1985). State and federal legislative and executive actions directly impact on a number of these collective bargaining subjects. If an exclusive representative is to effectively perform its collective bargaining responsibilities for all teachers, it must be able to voice its opinions on actions that affect these subjects at both the state and federal levels.

 Consequently, we must agree with the standard set out in *Robinson*. So long as lobbying activities are pertinent to the collective bargaining duties of the exclusive representative and are not merely for the purpose of advancing the political or ideological positions of the exclusive representative, they are properly assessable against non-members. Under such a standard, expenses for attending "Solidarity Day" to voice the exclusive representative's position on federal budget cuts in educational spending and expenses for lob-

5. *See* Indiana Code sections 20–7.5–1–1 to 20–7.- 5–1–14 (Burns 1985).

bying the general assembly on "Prime Time" and teacher retirement benefits are clearly assessable. The trial court committed no error in requiring appellants to pay for these activities.

## SOCIAL PROGRAMS

Certain social programs, including expenditures to honor retiring teachers, are also challenged by appellants. These activities were open to and benefited all teachers. Therefore, they are clearly assessable against non-members. *Ellis*, 466 U.S. at ——, 104 S.Ct. at 1893, 80 L.Ed.2d at 443.

## PROFESSIONAL DEVELOPMENT

Appellants next attack expenditures by MCEA for professional development workshops.[6] These workshops were intended to improve the professional competence of all teachers. Thus, while such workshops are not central to collective bargaining, they are, like social activities, sufficiently related to it to justify assessment against non-members. *See Ellis*, at ——, 104 S.Ct. at 1893, 80 L.Ed.2d at 443.

## TREASURER'S ALLOWANCE

Also challenged by appellants is the assessment of a portion of the treasurer's allowance for the 1982–1983 school year. Appellants contend that 13.4% of the entries in MCEA's books for that school year were for non-assessable expenses. They would conclude, therefore, that 13.4% of the treasurer's allowance was not assessable against non-members. Appellants fail to consider the testimony given for MCEA substantiating its claim that it had no non-assessable expenditures during the 1982–1983 school year. From this evidence, the trial court could have properly concluded that the treasurer spent no appreciable amount of time on expenditures which would not be assessable against appellants. Therefore, assessment of the full treasurer's allowance was justified.

---

6. Appellants have also challenged expenditures by MCEA's Human Relations Committee. MCEA offered testimony, however, that this committee provided financial assistance for any teacher wishing to attend workshops in their

## UNEXPLAINED EXPENSES

Finally, appellants argue that several relatively insignificant expenditures were not properly charged against non-members because MCEA failed to adequately demonstrate that they were sufficiently related to its collective bargaining responsibilities. These expenses included the cost of floral arrangements, monies spent by the Public Relations Committee, and an unexplained check drawn on the secretary's account. Once again, however, appellants have ignored testimony presented by MCEA supporting its claim that all of its expenditures were assessable against non-members. This was sufficient evidence from which the trial court could properly conclude that these miscellaneous expenses were includable in the fair share representation fee.

## ISTA AND NEA EXPENDITURES

Appellants also challenge that part of the representation fee which represents payments to ISTA and NEA. However, unlike their challenge to MCEA's expenditures, appellants arguments here do not question the assessability of any specific class of expenditure by either ISTA or NEA. Rather, they first contend that MCEA failed to adequately establish the extent to which ISTA and NEA assisted MCEA in collective bargaining. As we discussed above, this argument is based on an inappropriate method of calculation. Appellants also challenge the amount of fair share representation fee destined for ISTA and NEA. This is merely an invitation to reweigh the evidence which we will not do. The trial court's determination of the proper fair share representation fee is supported by sufficient evidence contained in the record.

Judgment of the trial court is affirmed.

ROBERTSON, P.J., and NEAL, J., concur.

---

field. Record at 197–98. Therefore, the assessability of these expenses is controlled by our discussion of professional development expenses.