James P. **LEHNERT, Elmer S. Junker, James E. Lindsey, Sam C. Peticolas, John R. Schauble, and Theodore D. Speerman, Plaintiffs,**

v.

The **FERRIS FACULTY ASSOCIATION– MEA–NEA, Michigan Education Association, National Education Association of the United States, The Board of Control of Ferris State College, S. Eugene Bychinsky, Robert D. Ewigleben, Earl D. Gabriel, Robert P. Gerholz, Fran Harris, Delbert D. Long, Robert C. Redman, Thomas P. Scholler, Patricia M. Short, and Steven L. Thomas, Defendants.**

No. G78–346 CA1.

United States District Court, W.D. Michigan, S.D.

Dec. 9, 1988.

Allaben, Massie, Vander Weyden & Timmer by Sam F. Massie, Jr., Grand Rapids, Mich., Raymond J. LaJeunesse, Nat. Right to Work Legal Defense Foundation, Springfield, Va., for plaintiffs.

Mika, Meyers, Beckett & Jones by Steven L. Dykema, Grand Rapids, Mich., for defendant, the Bd. of Control of Ferris State College.

Mitchell E. Roth, Office of General Counsel, Nat. Educ. Ass'n, Washington, D.C., for Nat. Educ. Ass'n.

White, Beekman, Przybylowicz, Schneider & Baird by Arthur R. Przybylowicz, James J. Chiodini, Okemos, Mich., for Union defendants.

## OPINION

ENSLEN, District Judge.

### Background

On August 25, 1986, I enjoined the above-captioned union defendants[1] from collecting future service fees from plaintiffs until such time as the unions had adopted constitutionally-adequate service fee collection procedures. *See Lehnert v. Faculty Association–MEA–NEA*, 643 F.Supp. 1306 (W.D.Mich.1986). I retained jurisdiction "for the sole purpose of determining if and when the union defendants have adopted constitutional procedures." *Id.* at 1335. The matter is currently before me once again on union defendants' motion for approval of new service-fee collection procedures and for dissolution of the injunction prohibiting the deduction of fees from the wages of plaintiff non-union public employees.

In September 1987, the union defendants moved for approval of a previous set of service fee collection procedures. Union defendants have modeled their procedures after collection procedures that were approved in *Andrews v. Education Association of Chesire*, 829 F.2d 335 (2d Cir.1987) and *Lowary v. Lexington Board of Education*, 704 F.Supp. 1456 (N.D.Ohio 1988). In April 1988, the parties met with U.S. Magistrate Doyle Rowland, and counsel for the union defendants agreed to make modifications in the procedures and to submit them to this Court. When I then considered the service fee collection proce-

---

1. Here the so-called non-union defendants include Ferris State University, the Board of Control of Ferris State University, and the individual university officers. I have considered the non-union defendants suggestions in making my rulings, but it does not appear that these "non-union" defendants have standing to object to the union defendants' motion for approval within the context of the issues raised and litigated by plaintiffs in this case.

dures during the summer of 1988, this case had been pending for a decade.

On August 22, 1988, the Court issued its opinion and order denying, without prejudice, the union defendants' service fee collection procedures, 707 F.Supp. 1473. In the opinion, the Court identified specific areas that needed revision. The defendants report that they have revised their administrative procedures and policy so as to correct all deficiencies. *See* Affidavit of MEA Executive Director Beverly J. Wolkow, Exhibits A, B, C (September 1, 1988). The MEA Board of Directors approved the revisions to the MEA Policy Regarding Objections to Political/Ideological Expenditures on September 23, 1988. Affidavit of MEA Executive Director Beverly J. Wolkow, Exhibit A (September 23, 1988).

### Discussion

The union defendants filed two sets of procedures—one governing the 1987–88 and 1988–89 fiscal years and one governing the 1989–90 and subsequent years. They are in substance identical and will be discussed as one. A set of revised Procedures and Policy is included in this opinion. *See* Appendix. The Court disapproved of four areas in the September 1987 procedures. I will address each area and then discuss plaintiffs' objections to the revised procedures.

### Local Presumption

■ The Court, in its August 1988 opinion, disapproved of union defendants' use of the local presumption when calculating service fees for objecting employees. While a limited amount of imprecision is tolerable in calculating a service fee, a union should not calculate service fees by using presumed expenditures, as opposed to actual expenditures. "[B]ecause First Amendment rights are implicated, the method of calculating service fees for objecting employees ... must be narrowly drawn" in order to prevent collection of a clearly nonchargeable expenditure. *Damiano v. Matish*, 830 F.2d 1363, 1369 (6th Cir.1987). The second part of the Court's objection was that use of a local association

officer does not satisfy the requirements that expenditures be verified by an independent auditor.

To remedy these problems, defendants revised Step I of the procedures. Now if a local association wants to collect a service fee, it must disclose to non-members its major categories of expenditures, verified by an independent auditor. The relevant language in Step I, Part (2) now reads:

> In those instances where a local association service fee is collected, *a list of the local association's major categories of expenditures verified by an independent auditor* and an identification of whether the major category of expense, or a particular portion thereof, is chargeable to objectors *shall be provided.* In the event a court of competent jurisdiction determines that independent audits of local association expenditures are not required, then a list of the local association's major categories of expenditures certified by a local association officer shall be provided. (Emphasis added).

The union defendants also omitted the local presumption language from Step III of the procedures where it had formerly been. Under the revised procedures, it simply says, "... the arbitrator shall determine the proportion of the agency fee that is chargeable to non-members under applicable law." The result is if a local association wants to collect a local service fee, it is subject to the same standards applicable to the MEA and NEA.

The language has also been changed to reflect the fact that some local associations may choose not to collect a service fee.

The first sentence of Step I in the procedures now reads:

> By November 30, 1988, or as soon thereafter as possible, the Executive Director of the Michigan Education Association or his or her designee shall determine the amount of the MEA's, NEA's and local associations' *(for those locals collecting a service fee)* total expenditures for the 1987–88 fiscal year that were expended on chargeable and nonchargeable activities. (Emphasis added.)

Where a local association does not collect a local service fee, the information in the procedures will relate to the MEA and the NEA only. While the Court observes that the three proceeding revisions remedy past problem areas, the Court observes that the addition of the following sentence in Step I does not comply with the constitutional standards described in my August 22, 1988 Opinion—in fact, it is directly contrary.

> In the event a court of competent jurisdiction determines that independent audits of local association expenditures are not required, then a list of the local association's major categories of expenditures certified by a local association officer shall be provided.

Employing the so-called "local presumption" fails to comply with the constitutional requirements of *Hudson, Tierney,* and *Damiano.*

### Waiver Provision

Union defendants were also using a procedure that the Court found violated non-union members' First Amendment rights. In order to use a payroll deduction plan, employees were required to sign a waiver form in which they gave up the right to receive financial information and a full explanation of their rights as nonmembers. This procedure appeared to discourage the nonmembers' access to full and proper information under *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The Court acknowledged that First Amendment rights may be waived, but stressed that a waiver must be voluntary, knowing, and intelligently made, with full awareness of the legal consequences to be valid. The waivers would only be acceptable, I noted, where the waivers contained a clear and full explanation of the nonmembers' rights under *Hudson.*

According to the union defendants, Step I of the procedures now requires the unions to "provide to *all* non-union employees who are required to pay an agency fee adequate information [as required by the procedures]." In addition, all non-union employees, including all individuals who previously executed a waiver of their rights to receive the information, shall be provided with a copy of the procedures and the information required by the procedures. Affidavit of Beverly J. Wolkow, at 2 (September 1, 1988). The unions have also agreed to disregard the former waivers and consider them without force and effect. Defendant's Brief in Support of Motion to Dissolve Injunction, at 5. Moreover, according to the defendants, any future attempt to secure a waiver shall conform to the standards set forth in the Court's August 1988 opinion.

### Escrow

The Court stated in its August 1988 opinion that the language in the procedures should be changed to clearly indicate that, pending a decision by the impartial decision-maker, all payments of the non-member's reduced fee must be paid directly into escrow. In all other respects, I found the proposed escrow procedure to comport with the mandates of *Hudson.* In response to the Court's directive, the union defendants have added the following language to Step II of the procedures:

> All such payments required of an objecting non-member by these procedures shall be paid into the First of America–Central escrow account and shall remain in said account until such time as the arbitrator has issued his or her decision on the proportion of the agency fee that is chargeable to non-members. Thereafter all such funds in the escrow account shall be disbursed in conformity with these procedures.

With this addition, the union defendants clearly establish that all payments required under the procedures will be paid into escrow and remain there until the independent arbitrator renders a decision.

### The Standard for Chargeable Costs

■ At trial, I found the NEA's rebate procedure to be deficient under *Hudson* because "the method for determining the reduced fee or 'rebate' amount is based on an acknowledgement of noncharged, political activity rather than a justification of the chargeable activity and expenditures." *Lehnert v. Faculty Ass'n–MEA–NEA,* 643

F.Supp. 1306, 1333 (W.D.Mich.1986). The standard for calculating the fee must therefore properly define chargeable costs in order to pass constitutional muster under *Hudson*.

The definition of chargeable activities that will be applied in these procedures is found in Policy Regarding Objections to Political–Ideological Expenditures.[2] *See* Affidavit of Beverly J. Wolkow, Exhibit C (September 1, 1988). To begin with, the policy statement said that the reduced fee for non-members would be based on the percentage of annual expenditures for the prior year "necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representation of the employees." Previously, however, the policy statement defined as nonchargeable "the financial support of an ideological cause or political activity unrelated to collective bargaining, contract administration, grievance adjustment, and *employee representation*." *Id.* (emphasis added). In my August 1988 opinion, I found that the logical implication of this language is that any ideological cause or political activity related to employee representation would be chargeable. The phrase "employee representation," standing alone, appeared to be constitutionally overbroad.

Now the policy language defining nonchargeable reads: "the financial support of an ideological cause or political activity unrelated to collective bargaining, contract administration, grievance adjustment, and *lawfully chargeable employee representation*." *Id.* (emphasis added). While this definition is somewhat circular, it eliminates the implication that any ideological cause or political activity related to employee representation would be chargeable. Moreover, the case law in this area finds rather elusive a precise definition of what is properly chargeable, and therefore, by exclusion, what is nonchargeable. The

Sixth Circuit, for example, has said that "the range of union expenditures will no doubt be as broad and varied as there are unions. It is not necessary for us to anticipate the categorization of any potential expense for we see that as an administrative determination by the independent decision-maker." *Tierney v. City of Toledo*, 824 F.2d 1497, 1504–05 (6th Cir.1987) (acknowledging a "gray area" of expenses that may advance neither or both political/ideological or collective bargaining interests).

In sum, union defendants have revised their policy and procedures in the following ways to reflect the "relatively few" areas the Court specified in its August 22, 1988 opinion. At this time, if a local association seeks to collect a local service fee, it must prove disclosure of its major categories of expenditures verified by an independent auditor. The amount of the service fee for the local, state, and national associations will be determined under applicable law. The procedures and the information required by the procedures will be provided to *all* non-members, including those who may have formerly signed a waiver of their right to receive information. The defendants will no longer use the former waivers and will treat all former waivers as null and void. The union procedures clearly state that all payments required by the procedures will be paid into escrow pending an independent arbitrator's decision. Finally, the standard for chargeable costs has been modified to clarify that the defendants seek to collect only for lawfully chargeable activities.

The plaintiffs do not object to most of the substantive areas of the revised procedures. They do, however, make a number of requests of the Court. First, the plaintiffs argue that under *Hudson*, a union should not exact a fee from a non-member

---

**2.** The first sentence of the policy statement as found in Exhibit C has also been modified in a non-substantive fashion related to the "chargeability" issue. The policy as found in Exhibit C now reads, ". . . no individual required to pay a service fee to the association affiliated with the [MEA]." This change was made because of the changes made to deal with the Court's decision on the local presumption. Under the revised procedures, some local associations may no longer "require" a local service fee although the MEA and NEA service fees will still be collected. Thus, the policy as revised more accurately reflects what may occur when the procedures are implemented.

without first establishing acceptable constitutional procedures. *Hudson*, 475 U.S. at 305, 106 S.Ct. at 1075 (Stevens, J., concurring). They argue that defendants' revisions of policy will not be complete until the MEA Board of Directors adopts the revised policy. That issue is now moot, however, because the MEA Board of Directors did indeed approve the revised policy on September 23, 1988. *See* Affidavit of Beverly J. Wolkow, Exhibit A (September 23, 1988).

The plaintiffs next object to the procedures because Step I states that defendants intend to require nonmembers to pay a service fee for the 1987–88 fiscal year which ended on August 31, 1988. Plaintiffs claim though that in a prior stipulation (February 1, 1988), defendants irrevocably waived any claim to collect service fees for the years prior to the one in which the Court approves these collection procedures.[3] Although I believe this particular objection is contractual, not constitutional, and goes beyond my purposes of this litigation, defendants will apparently not be seeking fees for the 1987–88 fiscal year, thus the issue is moot. *See id.* at ¶ 4.

Plaintiffs also argue that if the Court approves the union defendants' service fee collection procedures, the Court should then require by permanent injunction both the implementation of those procedures and their incorporation into the collective bargaining agreement. Plaintiffs' Brief in Opposition to Approval of Revised Procedures and Dissolution of Injunction, at 5. Plaintiffs cite *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987), for the proposition that the collective bargaining agreement and the procedures must "work together" and that the procedures should be incorporated into the contract.

■ The collective bargaining agreement and the procedures must certainly function in harmony, yet the Court disagrees that the procedures must by court order be incorporated into the collective bargaining agreement. As defendants suggest, *Tierney* is to the contrary:

Beyond that, ... we do not endeavor to allocate which procedural minima or guidelines must be contained in the ordinance and which may be properly incorporated into the TPPA's [procedures]. To the extent the Union adopted [procedure] is in compliance with the ordinance, is workable and constitutionally adequate, we believe that the ordinance itself will probably be wholly satisfactory.

824 F.2d at 1505.

Recall also that I retained jurisdiction in this case "for the sole purpose of determining if and when the union defendants have adopted constitutional procedures." *Lehnert*, 643 F.Supp. at 1335. Then as now I intend to abide by the fundamental policy that courts are to be at most minimally involved in labor disputes. *Tierney*, 824 F.2d at 1502. In any case, plaintiffs' concerns are now moot because very recently the employer and unions have agreed to incorporate into their bargaining agreement, by reference, the procedures approved by this Court. Affidavit of David L. Thompson, at 1–2, Exhibit A.

## CONCLUSION

■ Now before the Court is a set of revised service fee collection procedures, not the first set of revised procedures I have reviewed. Ever closer to constitutional adequacy, the procedures have but one sentence that falls below the standards of constitutionality as set forth by the Supreme Court's trilogy—*Hudson*, *Tierney*, and *Damiano*. It should come as no surprise to the union defendants that the second sentence in Step I, part (2) is unacceptable. It is contrary to the explicit standards described in my August 22, 1988 opinion, and is also inconsistent with the sentence before it.

Therefore, the Court would approve the current service fee collection procedures with the omission of the second sentence in Step I. Step I, part (2) would then read:

In those instances where a local association service fee is collected, a list of the

---

3. Plaintiffs also point out that their settlement agreement with defendants excepts fiscal year 1981–82. *See* Settlement Agreement, at ¶ 2.

local association's major categories of expenditures verified by an independent auditor and an identification of whether the major category of expense, or a particular portion thereof, is chargeable to objectors shall be provided.

If the union defendants submit to the Court, no later than January 5, 1989, an affidavit stating that the current procedures with the omission of the objectionable sentence are acceptable and accurately reflect the administrative procedures of the union defendants, the Court will grant defendants' Motion to Dissolve Injunction and for Approval of Revised Procedures. I will also consider and rule on plaintiffs' Motion for Injunction Pending Appeal at that time. The nonunion defendants' objections to the revised procedures have been considered and granted to the extent consistent with this opinion.

## APPENDIX

### 1987–88 FISCAL YEAR
### AND
### 1988–89 FISCAL YEAR
### OBJECTIONS TO POLITICAL IDEOLOGICAL EXPENDITURES

### ADMINISTRATIVE PROCEDURES

#### Step I

By November 30, 1988, or as soon thereafter as possible, the Executive Director of the Michigan Education Association or his or her designee shall determine the amount of MEA's, NEA's, and local associations' (for those locals collecting a local service fee) total expenditures for the 1987–88 fiscal year that were expended on chargeable and non-chargeable activities. The Executive Director or his or her designee shall then calculate the reduced fee that an objector will be required to pay for the 1987–88 fiscal year and the 1988–89 fiscal year based on expenditures during the 1987–88 fiscal year by the NEA, MEA, and local associations. The amount of the reduced fee for each year shall be further reduced by an additional Five Dollars ($5) to make allowance for disputed chargeable costs. By November 30, 1988, or as soon thereafter as possible, the Executive Director shall provide to all non-union employees who are required to pay an agency fee adequate information identifying the NEA's, MEA's and local associations' total expenditures for the 1987–88 fiscal year sufficient to enable them to assess the propriety of the service fee calculation. The information provided to non-union employees shall include:

(1) A list of expenditures made by the NEA and MEA, by major category, during the 1987–88 fiscal year verified by an independent auditor and an identification of whether the major category of expense, or a particular portion thereof, is chargeable to objectors;

(2) In those instances where a local association service fee is collected, a list of the local association's major categories of expenditures verified by an independent auditor and an identification of whether the major category of expense, or a particular portion thereof, is chargeable to objectors shall be provided. In the event a court of competent jurisdiction determines that independent audits of local association expenditures are not required, then a list of the local association's major categories of expenditures certified by a local association officer shall be provided;

(3) The amount of the reduced agency fee;

(4) The method used to calculate the reduced agency fees; and

(5) A copy of this procedure.

#### Step II

Within 30 days of the MEA providing the information identified in Step I, non-union employees shall give written notice to the Executive Director of MEA at 1216 Kendale Boulevard, P.O. Box 2573, East Lansing, Michigan 48823, either by mail or by personal delivery, of the non-union employee's decision to:

(1) Join the union and pay union dues;

(2) Pay a service fee equal to dues less the pro rata cost of liability insurance provided to union members;

(3) Pay the reduced fee as determined by the Executive Director; or

(4) Pay the reduced fee into an interest-bearing escrow account with First of America–Central Bank of Lansing, Michigan, and challenge the reduced fee.

The non-union member may challenge the NEA portion of the reduced fee, the MEA portion of the reduced fee, the local portion of the reduced fee, or any combination thereof. Failure to provide timely notice will result in the non-union employee being required to pay a service fee equal to dues less the pro rata cost of liability insurance provided to union members. The challenge to the reduced fee will serve as the challenge for both the 1987–88 and 1988–89 fiscal years. At the time of filing an objection, the non-member shall pay the full amount of the reduced fee for the 1987–88 fiscal year and that portion of the 1988–89 reduced fee which has accrued into the First of America–Central escrow account. Collection of service fees for non-members will not begin until after the period for written objection has expired. All such payments required of an objecting non-member by these procedures shall be paid into the First of America–Central escrow account and shall remain in said account until such time as the arbitrator has issued his or her decision on the proportion of the agency fee that is chargeable to non-members. Thereafter all such funds in the escrow account shall be disbursed in conformity with these procedures.

Non-union employees who become part of the bargaining unit after the MEA has provided the information identified in Step I, shall be provided with the information identified in Step I within 30 days of becoming a member of the bargaining unit and shall have 30 days from the time MEA provides the information in which to give the written notice to the Executive Director of MEA described in Step II. If the non-union employee challenges the reduced fee and the challenge occurs too late to allow the employee to participate in the hearing described in Step III of these procedures, no separate hearing shall be held, but the non-union employee's agency fees will be determined based upon the hearing described in Step III.

**Step III**

Within 15 days of the deadline for providing written notice challenging the reduced fee, the MEA will initiate the procedure for a consolidated hearing of all objections before an impartial decision-maker. For this year only, the hearing will involve the agency fee for both fiscal 1987–88 and fiscal 1988–89, since the same data will be used to determine the fees. An arbitrator will be selected pursuant to the Rules for Impartial Determination of Union Fees of the American Arbitration Association (said rules being attached to this procedure) and the conduct of the hearing shall proceed in accordance with those rules, except that the union may not waive oral hearings pursuant to Rule 19.

After the hearing, the arbitrator shall determine the proportion of the agency fee that is chargeable to non-members under applicable law. The arbitrator shall issue the decision and determination not later than 30 days from the closing of the hearing, but in no event later than May 1, 1989, and submit copies to the MEA and to each objector. In no event may the arbitrator determine the agency fee that is chargeable to non-members to be an amount greater than the reduced agency fee.

After the arbitrator's decision, the MEA shall direct the disbursement of all funds in the escrow account, including interest, to the proper parties in accordance with the arbitrator's decision. If the objector has not paid sufficient money into the escrow account for the 1988–89 fiscal year, the objector shall be responsible for payment of the difference between the amount determined chargeable by the arbitrator and the amount actually paid into escrow.

The objectors and/or the NEA, MEA, or local association may challenge the arbitrator's decision, pursuant to law, but such challenge, if successful, shall not result in an agency fee greater than that determined by the arbitrator.

## POLICY REGARDING OBJECTIONS TO POLITICAL–IDEOLOGICAL EXPENDITURES

Upon timely objection, no individual required to pay a service fee to the Michigan

Education Association (MEA) or a local affiliate shall be required, through the payment of such a fee, to contribute to the financial support of an ideological cause or political activity unrelated to collective bargaining, contract administration, grievance adjustment and lawfully chargeable employee representation. An individual who, in compliance with the administrative procedures established by the Executive Director of the Michigan Education Association, objects to the use of a portion of his/her service fees to support such an ideological cause or political activity shall be required to pay a reduced fee based upon a determination of the percentage of the MEA's annual expenditures for the prior year necessarily or reasonably incurred for the purpose of performing the duties of an exclusive representative of the employees.