**H. Jane PING, et al.,**
**Plaintiffs–Appellants,**

v.

**NATIONAL EDUCATION**
**ASSOCIATION, et al.,**
**Defendants–Appellees.**

**No. 88–2390.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 17, 1989.

Decided April 7, 1989.

Stephen C. Cline, Indianapolis, Ind., for plaintiffs-appellants.

Jeremiah A. Collins, Bredhoff & Kaiser, Washington, D.C., for defendants-appellees.

Before WOOD, Jr., POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

■ This case involves the constitutionality of the procedural scheme employed by some Indiana teachers unions to collect fair share fees from their non-union employees. Fair share fees are the fees paid by non-union employees to a union to cover the employees' pro rata share of the costs of the union's activities as the exclusive representative of the employees in dealing with management. Because the union may not coerce non-members into supporting political or ideological views with which they may not agree, however, the fair share fee cannot include provision for funds spent by the union to support its political or ideological views. Ping and her fellow plaintiffs (collectively "plaintiffs"), all non-union Indiana school teachers, initiated this action claiming that the procedures used by the unions to ensure against impermissible use of their fair share fees were constitutionally inadequate. The plaintiffs, shortly after filing their suit, moved for a preliminary injunction to intermit the state court proceedings brought by the unions to collect the fees. The district court denied the motion after finding that the plaintiffs failed to show that they would suffer irreparable harm absent the injunction, and the plaintiffs have appealed. We agree that no injunction should issue, although we rely on a rationale different from that cited by the district court, and therefore affirm.

I.

The defendants in this case, principally Indiana teachers unions and school corporations (collectively "defendants"), are all parties to collective bargaining agreements which permit the unions to collect fair share fees from non-member teachers employed by the school corporations. As part of those agreements, the unions have promulgated procedures to determine the amount of the fair share fees to be collected from the non-member teachers.

In practice, the unions retain the American Arbitration Association to select an arbitrator to determine the amount of the fair share fee for a particular school year.

The arbitrator holds hearings where the unions present evidence relating to the amount of their expenditures which are properly chargeable [1] to the non-members and where any non-member who desires has the opportunity to counter the unions' evidence. The arbitrator's determination of the fair share fee is binding only on the unions and not on the non-members. If the non-member teachers refuse to pay the fair share fee, the unions' only recourse is to bring suit in state court to collect the fee. *See Ake v. National Education Association*, 531 N.E.2d 1178, 1181 (Ind.App.1988).

This case involves the determination of the fair share fee for the 1986–87 school year for some 1700 objectors. Hearings to determine the amount of the fair share fee were held in Indianapolis over a five-day period before Arbitrator Frank A. Keenan. The union presented 141 exhibits to support the fair share fee amount that had been internally determined and was successful in convincing the arbitrator that its amount was correct. The union has filed actions in Indiana state court to collect the fees, but none of those cases has yet reached judgment. It is those state court proceedings that the plaintiffs moved the district court to enjoin pending a determination on the merits.

The plaintiffs claim that the procedure described above is constitutionally inadequate because it does not provide the objecting teachers with an impartial decision-maker to adjudicate objections to the fair share fee amount. Specifically, the plaintiffs contend that (1) the procedures for selecting the arbitrator were inadequate because the objectors had no voice in the selection process; (2) the union failed to provide information regarding the cost of the arbitrator's services; (3) the arbitrator failed to grant a continuance after being notified that one of the attorneys for the objectors had a conflict; (4) the arbitrator failed to have an independent auditor certify that expenses were either chargeable, non-chargeable, or of questionable chargeability; and (5) the arbitrator decided the fair share fee amount based on misinformation provided by the unions.

The plaintiffs claim that these inadequacies in the arbitration left the union's procedures for fair share fee collection constitutionally infirm. In the district court, they moved for a preliminary injunction against the state court proceedings instituted by the unions to collect the fair share fees. The district court, upon the recommendation of a magistrate, denied the motion. According to the district court, a preliminary injunction would be inappropriate because the plaintiffs have an adequate remedy at law. Specifically, the court found that the plaintiffs would be able to recoup any money unconstitutionally collected by the unions in the form of damages. The district court also refused to stay the state court proceedings pending the outcome of this appeal. The plaintiffs have appealed both decisions and we affirm, although on grounds other than those relied upon by the district court.

## II.

### A.

Before a preliminary injunction will issue, the movant must show, as a threshold matter, that: (1) they have no adequate remedy at law; (2) they will suffer irreparable harm if the injunction is not granted; and (3) they have *some* likelihood of success on the merits in the sense that their "chances are better than negligible." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386–87 (7th Cir.1984); *see also Lawson Products, Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1433 (7th Cir.1986). If the movant can meet this threshold burden, the inquiry then becomes a "sliding scale" analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits. In particular, and keeping in mind that the public interest may become important in a given case, the "more likely the plaintiff is to win, the less

---

1. A union's expenses resulting from its duties as the exclusive bargaining representative of the employees are said to be "chargeable" expenses.

Expenses deriving from ideological or political activities are known as "non-chargeable" expenses.

heavily need the balance of harms weigh in his favor [in order to get the injunction]; the less likely he is to win, the more need it weigh in his favor." *Roland Machinery,* 749 F.2d at 387.

In this case, the district court determined that it did not have to reach the sliding scale analysis because the plaintiffs had failed to make the threshold showing that they would suffer irreparable harm from a denial of the injunction. We agree that there is no need to reach the sliding scale analysis in this case but we do not reach the question of whether the district court was correct in finding no irreparable harm from a denial of the injunction. Instead, we find that no injunction should have issued because the plaintiffs failed to meet their threshold burden of showing some likelihood of success on the merits. *See Libertarian Party of Indiana v. Packard,* 741 F.2d 981, 986 (7th Cir.1984) ("a reviewing court may affirm the decision of a court below if that decision is correct, even though the court below relied upon a wrong ground or gave a wrong reason.").

### B.

■ It is by now a well-settled matter that a non-union member can be forced to share in the expenses incurred by a union in its role as the exclusive bargaining representative on behalf of employees. *Chicago Teachers Union v. Hudson,* 475 U.S. 292, 301, 106 S.Ct. 1066, 1073, 89 L.Ed.2d 232 (1986). This rule recognizes that a union, in exchange for its position as the exclusive bargaining representative, is under a duty to represent fairly all of the employees within the relevant unit, including those who are not members of the union. *Abood v. Detroit Board of Education,* 431 U.S. 209, 221, 97 S.Ct. 1782, 1792, 52 L.Ed.2d 261 (1977). That representation is not costless, however, and thus the Supreme Court has held that non-union employees can be forced to pay their pro rata share of the costs of representation. On the other hand, non-members cannot be forced to pay for expenses related to political and ideological activities unrelated to the costs of representation. *Hudson,* 475

U.S. at 302, 106 S.Ct. at 1074. To force non-members to financially support political or ideological causes with which they might not agree, according to the Court, would be too great an impingement on the first amendment rights of the non-members. *Ellis v. Brotherhood of Railway Clerks,* 466 U.S. 435, 447, 104 S.Ct. 1883, 1891–92, 80 L.Ed.2d 428 (1984). The objective, then, is to come up with a system of procedures which prevent " 'compulsory subsidization of ideological activity by employees who object thereto without restricting the union's ability to require every employee to contribute to the cost of collective bargaining activities.' " *Id.,* quoting *Abood,* 431 U.S. at 237, 97 S.Ct. at 1800.

In attempting to strike the balance between the union's financial needs and the non-members' first amendment rights, the Supreme Court has listed three procedural prerequisites to the receipt of fair share fees. First, the union must disclose sufficient information to permit non-members to make an informed decision about whether to object to the amount of the fair share fee. *Hudson,* 475 U.S. at 306–07, 106 S.Ct. at 1075–76. Second, the union must set up an escrow account to hold the fees paid by non-members who have indicated an objection to the amount of the fair share fee. *Id.* at 305, 106 S.Ct. at 1075. The escrow arrangement ensures that the union will not have access to funds which may eventually be determined to have been paid on the basis of charges for the union's political or ideological activities. *Id.* Third, the union must have in place a system whereby any objections to the amount of the fair share fee are adjudicated reasonably expeditiously by an impartial decisionmaker. *Id.* at 307, 106 S.Ct. at 1076. It is this third requirement which the plaintiffs claim is unsatisfied by the defendants' procedural scheme, thus making the scheme unconstitutional.

As discussed above, after a non-member has declined to voluntarily pay the fair share fee determined by the defendants, the American Arbitration Association ("AAA") is retained to select an arbitrator to independently determine the percentage of the union's expenses which are charge-

able to non-member employees. The arbitrator is selected by AAA without any input by either the union or the objectors, but is subject to challenge for cause pursuant to AAA rules. The arbitrator holds hearings, where both sides are free to present evidence, to determine the amount of the union's expenses chargeable to non-members. The defendants in this case have agreed to be bound by the arbitrator's decision; the plaintiffs, on the other hand, are free to reject the arbitrator's decision and can only be forced to pay the fair share fee after an adjudication by the Indiana state courts. The state court is not bound by the arbitrator's decision as to the correct fair share fee but is free to give the arbitral decision as much or as little weight as the court feels it deserves. *See McDonald v. West Branch*, 466 U.S. 284, 292 n. 13, 104 S.Ct. 1799, 1804 n. 13, 80 L.Ed.2d 302 (1984).

The plaintiffs claim that the arbitration procedure followed by the defendants to determine the amount of the fair share fee does not satisfy *Hudson's* impartial decisionmaker requirement. Initially, the defendants respond that, unlike the run-of-the-mill fair share fee case, the impartial decisionmaker in this case is not the arbitrator but the Indiana state court. According to the defendants, the requirement of an impartial decisionmaker is inextricably tied to the payment of the fair share fee—*i.e.* there is no need for an impartial decisionmaker until the fair share fee has been paid and an objection lodged. However, because in Indiana the non-members do not have to pay the fee until a court has had the chance to determine the proper amount of the fee, no impartial decisionmaker other than the court is required. *But see Cheeseman v. Jay Sch. Corp. Classroom Teachers Assn.*, 527 N.E.2d 715, 719 (Ind.App. 1988) (court looked to *arbitration* procedures to determine whether procedural requirements were in compliance with *Hudson*). While this argument has some appeal, we do not need to decide whether it is correct, for even if the arbitrator is the impartial decisionmaker in this case, we find no constitutional defect in the procedures used in that arbitration.

The plaintiffs' first complaint is that they have no say in the selection of the arbitrator. The plaintiffs read *Hudson* to require that both parties have some input into determining the identity of the impartial decisionmaker. In *Hudson*, the Chicago Teacher's Union had set up a three-step procedure for adjudicating the objections of non-members. 475 U.S. at 308, 106 S.Ct. at 1077. The first two steps involved internal review of the fair share fee by Union officials and only at the third step was an arbitrator utilized. *Id.* However, the Court found that even this third step did not satisfy the impartial decisionmaker requirement since the selection of the arbitrator represented "the Union's unrestricted choice." *Id.* The Court went on to state that:

> [W]e think that an expeditious arbitration might satisfy the requirement of a reasonably prompt decision by an impartial decisionmaker, so long as the arbitrator's selection did not represent the Union's unrestricted choice. In contrast to the Union's procedure here, selection of an arbitrator frequently does not represent one party's unrestricted choice from a list of state-approved arbitrators. See F. Elkouri & E. Elkouri, How Arbitration Works 135–137 (4th Ed.1985); O. Fairweather, Practice and Procedure in Labor Arbitration 79–90 (2d ed. 1981).

*Id.* at 308 n. 21, 106 S.Ct. at 1077 n. 21.

In this case, the selection of the arbitrator did not represent the defendants' unrestricted choice. Instead, the arbitrator was selected by the American Arbitration Association, according to their own internal selection rules, without any input by the defendants. That procedure clearly meets the requirement that the selection of the arbitrator not represent the untrammeled choice of the unions. *See Damiano v. Matish*, 830 F.2d 1363, 1371 (6th Cir.1987) (amended policy providing that arbitrator will be selected by AAA satisfies *Hudson's* impartial decisionmaker requirement); *Andrews v. Education Association of Cheshire*, 829 F.2d 335, 340 (2d Cir.1987) (same).

Plaintiffs next contend that the arbitration fails to meet the procedural requirements of *Hudson* because no information has been disclosed to them about the payment of the arbitrator. Yet the information requested by the plaintiffs was available. The plaintiffs were informed by AAA that the arbitrator would be paid according to the per diem rate for that arbitrator, information which is a matter of public record. Thus, the plaintiffs' claim that the procedures were tainted by a lack of disclosure concerning the costs of the arbitration is without merit.

 The third defect with the arbitration detected by the plaintiffs is that the arbitrator refused to grant a continuance of the hearing after the plaintiffs' attorney informed the arbitrator of a scheduling conflict. The problem with this argument is that the arbitrator was under no duty to grant a continuance based on a conflict with the schedule of a single attorney representing only 400 of the (approximately) 1700 objecting teachers. It is evident that requiring the arbitrator to schedule the hearings to satisfy the calendars of the attorneys for all 1700 objectors would be nigh impossible.

 The fourth alleged problem with the arbitration is that financial information was introduced which was not properly audited. The financial information that was introduced was certified to be accurate by independent auditors but, according to the plaintiffs, that was not enough. Instead, the plaintiffs believe that the auditors should have certified that the expenses fell into one of three categories: clearly chargeable expenses, clearly non-chargeable expenses, and reasonbly disputable expenses. They find support for this argument in a statement made by a district court judge in another fair share fee case:

> Although the financial information that appears to be the type that will be provided to the fair share fee payer does break the expenses down into chargeable and non-chargeable expenditures, the breakdown as it stands now does not divide the expenses into the three categories contemplated by the *Tierney* court:

> clearly chargeable expenses; clearly non-chargeable expenditures; and those expenditures that reasonably might be disputed by the parties.

*Lowary v. Lexington Local Board of Education*, 704 F.Supp. 1430, 1447 (N.D.Ohio 1987), *rev'd,* 854 F.2d 131 (6th Cir.1988).

We find no support in either *Tierney v. City of Toledo*, 824 F.2d 1497 (6th Cir.1987) or any other fair share case for the proposition that an independent auditor must make the *legal* determination of whether expenses are chargeable, non-chargeable, or subject to question. Indeed, that argument was explicitly repudiated by the Second Circuit in *Andrews.* 829 F.2d at 340. More importantly, the proposition was repudiated, upon a motion for reconsideration, in the very case cited by the plaintiffs for support. *See Lowary v. Lexington Local Board of Education*, 704 F.Supp. 1456, 1461, 1466 (N.D.Ohio 1988) ("[T]he Court has carefully considered the role of the independent auditor and has determined that it is not the role of the auditor to make an initial chargeability, non-chargeability, gray area determination. Rather, it is the independent auditor's role to verify an audit of the expenditures provided by the union."). The plaintiffs' failure to discover this reconsideration by the judge in *Lowary* borders on sanctionable conduct. Suffice it to say, however, that we are unpersuaded that the arbitration in this case was tainted, let alone constitutionally tainted, by the form in which financial information was introduced.

Finally, the plaintiffs fault the arbitrator for relying on information provided by the defendants which the plaintiffs believe was false. The plaintiffs do not explain how, even if this allegation were true, the arbitrator's actions would render the arbitration constitutionally inadequate. There are plenty of ways to challenge the introduction of false evidence, but this is not one of them.

Thus, none of the objections made by the plaintiffs convince us that the arbitration to determine the amount of the fair share fee was constitutionally inadequate. There is simply no evidence, so far, that the arbi-

trator was not an impartial decisionmaker. Under those circumstances, we believe the plaintiffs have not met their threshold burden of showing some likelihood of success on the merits.

### III.

For all the reasons discussed above, we find no constitutional infirmity with the arbitration in this case and therefore AFFIRM the denial of the plaintiffs' motion for a preliminary injunction.