**FORT WAYNE EDUCATION AS-SOCIATION, INC., Appel-lant–Plaintiff Below,**

v.

**Mary E. ALDRICH, et al., Appellees–Defendants Below.**

No. 02A04–9105–CV–142 [1].

Court of Appeals of Indiana, Third District.

Jan. 21, 1992.

 

**1.** This case was diverted to this office by order     of the Chief Judge.

Richard J. Darko, Mary Jane Lapointe, Lowe Gray Steele & Hoffman, Indianapolis, for appellant.

William T. Hopkins, Jr., Gallucci, Hopkins & Theisen, Fort Wayne, David T. Bryant, National Right to Work Legal Defense Foundation, Inc., Springfield, Va., for appellee.

STATON, Judge.

Fort Wayne Education Association (FWEA) appeals a negative judgment, raising five issues for our review, which we consolidate as the following four:

I.  Whether the trial court erred in imposing guidelines for the "fair share" plan to be implemented by FWEA.

II. Whether the trial court erred in rejecting FWEA's method of calculation of fair share fees.

III. Whether the trial court erred in imposing a burden of proof of "clear and convincing" evidence.

IV. Whether the additional procedures mandated by the trial court for the collection of "fair share" fees are constitutionally required.

We reverse.

We first encountered this dispute between FWEA and non-union teachers over "fair share" fees in 1988. *Fort Wayne Education Association, Inc. v. Aldrich* (1988), Ind.App., 527 N.E.2d 201 (*Aldrich I*). "Fair share" fees are those fees paid by non-union teachers to the union to cover costs incurred for collective bargaining ac-

tivities on behalf of school employees, whether union or non-union. *Aldrich I, supra,* at 203. Non-union employees can be forced to pay their pro rata share of these costs, but they may not be forced to pay for expenses related to political and ideological activities unrelated to the costs of representation. *Ping v. National Educ. Ass'n* (7th Cir.1989), 870 F.2d 1369. This suit was instituted by FWEA to collect fair share fees from a number of non-union teachers ("Teachers").

In *Aldrich I,* FWEA followed a procedure whereby a "representation fee" was deducted from the paychecks of the Teachers as a fair share payment. If the non-union teacher objected to the union's use of those funds for political or ideological ends contrary to those of the teacher, the union would give a rebate to the objecting teacher after the close of the fiscal year upon calculation of the proportion of union expenditures which could be assigned to objectionable activities. The trial court found this "rebate scheme" constitutionally infirm and enjoined FWEA from collecting the fees in this manner. The trial court also enjoined FWEA from pursuing collection of the fair share fees until it had implemented a constitutionally permissible procedure for that purpose. FWEA brought an interlocutory appeal. We affirmed the trial court's grant of an injunction, but reversed the portion of the trial court's order which concluded that FWEA had delegated the power to resolve disputes over the amount of the fee to the Indiana Education Employment Relations Board.

■ A constitutionally adequate plan is required before a nonmember incurs any obligation to pay fees pursuant to a collective bargaining agreement. *Cheeseman v. Jay Sch. Corp. Classroom Teachers Ass'n* (1988), Ind.App., 527 N.E.2d 715, 719, *reh'g denied.* On remand, FWEA and the Teachers both submitted plans for the payment of fair share fees to the trial court. The plan submitted by FWEA implemented the procedure which it currently follows in the calculation of fair share fees. The trial court found both plans inadequate, and on

November 27, 1989, issued an order ("the November Order") implementing "guidelines" which future proposed plans would follow.[2] FWEA objected to a number of the guidelines and the parties were unable to reach an accord. The trial court entered final judgment and FWEA appeals.

### I.

#### *Power of the Trial Court*

FWEA argues that the trial court in effect "made up its own plan." It argues that in so doing, the trial court exceeded the scope of its jurisdiction. The Teachers in turn argue that the trial court had jurisdiction to grant equitable relief and that the trial court's order was within the scope of that jurisdiction. Moreover, they argue that this issue has been waived because it was not addressed in *Aldrich I*, although the trial court's request for proposed plans from the parties was a part of the injunction at issue there.

The trial court's November Order states:

In both plans, which the parties have submitted to the court, although progress is made toward conciliatory procedures, there are elements of an impermissible burden upon recognizable rights of each party. The insights of the experience of the last four years must not be lost to either expedience or excess. So long as claims are made from Defendants under this contract, the parties confer jurisdiction upon this Court to supervise its order of August 5, 1986. Other people, places and things are of no concern to this Court.

Having considered the transcript of the hearing on March 14, 1988, prior memorandum orders, *Aldrich, supra,* and the proposed plans of the parties, including Plaintiff's Response to Defendants' Proposed Fair Share Fee Plan, the court determines to set guidelines rather then [sic] authoring a plan, and orders the parties to file motions to amend or objections thereto, if any, within forty-

five (45) days and thereafter the final judgment of the Court shall be entered. Record, pp. 554–555.

It appears from the tenor of the November Order that the trial court proposed guidelines to be followed by the parties so that a plan could be implemented which did not infringe upon the rights of the parties. The trial judge explicitly stated that it was not his intention to author a plan for the parties.

We are aware of other courts who have taken a similar role in fair share fee cases. *See, e.g., Lehnert v. Ferris Faculty Ass'n* (W.D.Mich.1988), 707 F.Supp. 1482. As it is not altogether clear that the trial court exceeded its jurisdiction, we will address the merits of the trial court's continuation of the injunction in the face of FWEA's new plan.

### II.

#### *Method of Fee Calculation*

FWEA argues that the trial court erred in failing to approve the method of fee calculation which it proposed. The November order contained the following guidelines:

1. Expenses which are proposed as a fair share fee shall be arranged as to line item format and published in a clear and concise manner, certified as consonant with universally accepted accounting principles and practices (unless otherwise reported) and referenced to a succinct narrative commentary which demonstrates the nexus and germaness [sic] to collective bargaining, contract administration and grievance adjustment; and no item of expense, which upon objection, can not be so supported with clear and convincing evidence shall be chargeable as part of a fair share fee.

2. Only chargeable expenses of exclusive representation paid during the year last past shall constitute the basis for the calculation of the fair share fee assessed for the ensuing year which shall be pro-

---

**2.** The court issued two supplementary Memorandum Orders on January 10, 1991 and January 16, 1991, in which it amended and clarified

the November Order and responded to FWEA's objections.

portionately divided among the entire population of the bargaining unit, share and share alike.

Record, pp. 555–556. FWEA attacks these guidelines on two grounds.

### A.

### *Formula*

■ FWEA argues that its plan employed the proper formula for calculating fair share fees. It contends that the formula prescribed by the trial court in paragraph 2 of the November Order has been previously rejected by our courts. We agree.

The trial court recommended that the fair share fee should be calculated by assessing each nonmember with a pro rata share of the amount actually spent on collective bargaining activities. In *New Prairie Classroom Teachers Ass'n v. Stewart*, (1986), Ind.App., 487 N.E.2d 1324, 1328, *cert. denied, Stewart v. New Prairie Classroom Teachers Ass'n* (1987), 480 U.S. 917, 107 S.Ct. 1370, 94 L.Ed.2d 686, we stated:

> The teachers argue that the method for calculating their representation fee should be a pro rata share of the amount actually spent on collective bargaining activities, with [the union] required to prove such amount. The United States Supreme Court has not gone so far.

Instead, this court has consistently approved of the formula proposed by FWEA. *Abels v. Monroe County Educ. Ass'n* (1986), Ind.App., 489 N.E.2d 533, 539, *cert. denied* 480 U.S. 905, 107 S.Ct. 1347, 94 L.Ed.2d 518; *Stewart, supra,* at 1328; *Cheeseman, supra,* at 719. That method of calculation defines a fair share representation fee as dues less a pro rata share of non-assessable expenses. *Abels, supra.*

While not citing any cases in which a court has approved of their formula, the Teachers argue that the facts of this case justify a departure from the norm. In support of this argument, they quote a

number of passages from the record out of context, ultimately concluding that FWEA wishes to use its method of calculation in order to require non-member teachers to pay for non-chargeable political and ideological expenses. Appellee's Brief at 11. Our review of the record indicates the opposite conclusion. This court has previously declined the invitation to overrule those decisions which approve of FWEA's method of calculation. *Cheeseman, supra,* at 719. We see nothing in the record which mandates a departure from that formula in this case.

### B.

### *Chargeable Expenses* [3]

FWEA also contends that the trial court's recommendations improperly limit assessable expenses to those which are incurred within the bargaining unit. It argues that imposing that limit on chargeable expenses would exclude expenses incurred at the state and national levels by the Indiana State Teachers Association (ISTA) and the National Education Association (NEA) which benefit all teachers. The result, it argues, would be an artificially low fair share fee.

The Teachers respond that the language complained of, which is contained in the original injunction affirmed by this court in *Aldrich I,* is the law of the case. In addition, they contend that FWEA misreads the trial court's order, which they argue permits FWEA to charge expenses incurred by state and national organizations. In its reply brief, FWEA concedes that there is no dispute if the orders are interpreted as the teachers interpret them. However, FWEA contends that the language is unclear in that regard.

We agree that the trial court's discussion of this issue is somewhat unclear. The United States Supreme Court has stated:

> [C]hargeable activities must (1) be "germane" to collective-bargaining activity; (2) be justified by the government's vital

**3.** Expenses resulting from a union's duties as the exclusive bargaining representative of the employees are known as "chargeable" expenses, while those which derive from ideological or political activities are denominated "nonchargeable" expenses. *Ping, supra* at 1371. Alternatively, the expenses are sometimes denominated "assessable" and "nonassessable".

policy interest in labor peace and avoiding "free riders"; and (3) not significantly add to the burdening of free speech that is inherent in the allowance of an agency or union shop.

*Lehnert v. Ferris Faculty Ass'n* (1991), — U.S. ——, 111 S.Ct. 1950, 1959, 114 L.Ed.2d 572. This test is fairly broad—the local union may charge objecting employees for their pro rata share of the costs associated with otherwise chargeable activities of its state and national affiliates, even if those activities were not performed for the direct benefit of the objecting employees' bargaining unit. *Id.* at ——, 111 S.Ct. at 1961. Such activities may be made a part of the fair share fee so long as there is "some indication that the payment is for services that may ultimately enure to the benefit of the members of the local union by virtue of their membership in the parent organization." *Id.* at ——, 111 S.Ct. at 1961–62. Of course, the local union bears the burden of proving the proportion of chargeable expenses to total expenses. *Id.* at ——, 111 S.Ct. at 1962.

FWEA's plan contemplates that the arbitrator is to comply with existing law regarding the standards for chargeable expenses. The trial court's guidelines appear to do the same. Thus, there does not appear to be any dispute regarding the proper standard to be applied for the determination of chargeable expenses. In light of our ultimate conclusion that the November Order be vacated and the injunction modified, we find it unnecessary to comment further on this issue.

### III.

#### *Standard of Proof*

▪ The trial court's guidelines required that chargeable expenses be proved by "clear and convincing evidence." FWEA argues that this requirement is contrary to cases decided in the United States Supreme Court and in this court which have determined that the proper standard of proof is by a preponderance of the evidence. *See Ellis v. Brotherhood of Railway, Airline and Steamship Clerks* (1984), 466 U.S. 435, 104 S.Ct. 1883, 80 L.Ed.2d 428; *Abels, supra.* The Teachers state:

> The Teachers do not contest the authority that the [FWEA] cites as support for its contention that a "preponderance of the evidence" standard generally applies to a union's required showing of expenditures germane [to] activities for which it may properly assess a prorata [sic] portion to non-members. See *Ellis [supra].* However, what the [FWEA] overlooks is that the instant case differs from the circumstances present in *Ellis* and in all other cases cited.

Appellee's Brief, pp. 22–23. Accordingly, we will examine the distinguishing factors which the Teachers allege justify the imposition of a heightened standard.[4]

The Teachers first argue that the FWEA's plan improperly employs a "local presumption." Rather than calculate a separate fair share percentage for the local union, FWEA uses the fair value percentage calculated for ISTA, presuming that FWEA's percentage of nonchargeable activities will be the same or lower. The Teachers argue that this practice requires heightened scrutiny.

The local presumption has received a mixed review from the federal courts which have addressed the issue. Several courts have approved of its use, noting that in

---

**4.** Notably, the justifications proffered by the Teachers for the use of the "clear and convincing standard" were not the same offered by the trial court in imposing the standard. The court stated:

> A claimed infringement of the rights guaranteed in the First Amendment commands no less than a burden of proof that rises to the protective safeguards historically erected to shield against oppression. That the exclusive representative has the burden of going forward with proof that it has not compelled

> speech and assembly logically requires that the proof be demonstrated with clear and convincing evidence.

Record, pp. 630–631. This rationale was explicitly rejected in *Ellis:*

> The fact that petitioners invoke the First Amendment is insufficient reason to impose the heightened standard on their opponents, and we perceive no need to abandon the preponderance standard normally applicable in civil suits for damages.

*Id.* at 457, n. 15, 104 S.Ct. at 1897, n. 15.

nearly all cases, the state organization's expenditures for political and ideological ends will be greater than those at the local level.[5] *See Andrews v. Education Association of Cheshire* (D.Conn.1987), 653 F.Supp. 1373, *aff'd* (2nd Cir.1987), 829 F.2d 335; *Hohe v. Casey* (M.D.Pa.1988) 695 F.Supp. 814, *aff'd* (3rd Cir.1989), 868 F.2d 69, *cert. den.* 493 U.S. 848, 110 S.Ct. 144, 107 L.Ed.2d 102; *Gillespie v. Willard City Bd. of Educ.* (N.D. Ohio 1987) 700 F.Supp. 898. Thus, non-union teachers normally benefit from the use of the presumption, as some chargeable expenses will not be assessed them as fair share fees. *Andrews, supra,* 653 F.Supp. at 1378. These courts note that the Supreme Court has not required "absolute precision" in calculation of chargeable expenses. *Chicago Teachers Union v. Hudson* (1986), 475 U.S. 292, 307, 106 S.Ct. 1066, 1076 at n. 18, 89 L.Ed.2d 232.

The Sixth Circuit, however, has found the use of the local presumption to be unconstitutional. *Lowary v. Lexington* (6th Cir.1990), 903 F.2d 422, *cert. denied* — U.S. —, 111 S.Ct. 385, 112 L.Ed.2d 396.[6] In *Lowary,* the court found that the use of the presumption, where the local organization did not submit audited financial information to the arbitrator, improperly shifted the burden of proof to the objecting party. The court found that the local presumption "permits the unions to avoid providing audited and detailed financial statements to nonmembers concerning the local and district union affiliates in violation of *Hudson.*" *Lowary, supra,* at 431. The court concluded:

Requiring nonmembers to contribute to the cost of collective bargaining involves a substantial interference with their First Amendment right of freedom of association. Although it may be somewhat burdensome on the unions, full disclosure of financial information is a mini-

mal requirement in exchange for this interference. *Hudson* and a due regard for First Amendment values lead to this conclusion. The union must provide detailed information so that the dissenting teachers can understand why they are being charged. Only then can they make an informed decision.

*Lowary, supra* at 432.

The Supreme Court has not spoken on the issue. Notably, none of the cases cited has found that the use of the local presumption mandates a heightened standard of proof.

FWEA argues that since it provides audited financial information to the objecting teachers, it does not employ a "local presumption" as that term was used in *Lowary.* It would perhaps be more accurate to say that FWEA provides concrete evidence supporting the fair share calculation, rather than relying solely upon the local presumption. We find this practice to be distinguishable from that in *Lowary.* Here, each teacher is sent a memorandum outlining the fair share fee calculation procedure and a balance sheet, statement of fund balances, statement of receipts and disbursements, and statement of source and application of funds for the local union. The financial records are verified by an independent auditor. In addition, the information contains a budget for the current year and a proposed budget for the following year.

Given the extent of information provided to the objecting teachers by FWEA, we believe the concerns articulated by the Sixth Circuit in *Lowary* have been obviated. The teachers are provided audited financial information, giving them an evidentiary basis with which to challenge the local presumption if they feel there are discrepancies. Thus, under FWEA's plan, the burden still remains upon the union to

---

**5.** Such was the case here, where the percentage was calculated by FWEA for four or five years prior to the employment of the local presumption. In each year, the percentage of non-chargeable expenses was found to be lesser at the local level. Record, p. 911.

**6.** The Teachers also cite *Cramer v. Matish* (6th Cir.1990), 924 F.2d 1057 (table). As an unpublished opinion, its precedential value is limited to claims of res judicata, collateral estoppel or law of the case. Citation of unpublished opinions is disfavored. Circuit Rule 24(c), Rules of the United States Court of Appeals for the Sixth Circuit.

provide audited financial information consistent with the local presumption. Accordingly, we hold that the use of a local presumption, when accompanied by audited financial statements, is constitutionally permissible. Moreover, FWEA's choice to use the presumption does not justify the imposition of a heightened standard of proof.

The Teachers next argue that the information provided to objecting teachers is constitutionally inadequate. We held above that the information provided by FWEA is adequate. The Teachers do not contest the adequacy of the information in the packet from NEA. Thus, only the information from ISTA remains to be scrutinized.

The information provided to objecting teachers regarding ISTA covers nearly eighty pages and includes financial statements verified by an independent auditor, supplemental financial information verified by an independent auditor,[7] a budget handbook detailing all projected expenditures for the organization, and an explanation of the proposed fair share fee computation. The fair share fee computation outlines nine major categories and numerous subcategories. Each subcategory states the total amount spent in the subcategory, the percentage of expenditures assignable to excluded activities, and calculates from that percentage the dollar amount which represents the nonchargeable expenditures in that subcategory.

The information provided here is nearly identical to that found adequate in *Andrews v. Education Ass'n of Cheshire* (2nd Cir.1987), 829 F.2d 335. Moreover, the fair share calculation procedure used by ISTA was upheld by the Seventh Circuit in *Ping, supra*. The Teachers make much of the fact that ISTA does not keep contemporaneous records of employee time spent on nonchargeable activities, instead requiring its employees to estimate time spent on those activities. ISTA officials testified that contemporaneous recordkeeping would violate the union agreement with ISTA employees. In light of the Supreme Court's statement that absolute precision is not required in the calculation of the fair share fees, we hold that ISTA's practices comport with constitutional requirements.

The nature of the information provided to objecting teachers does not mandate a heightened standard of proof. We are aware of no court which has required fair share fees to be proved by clear and convincing evidence, and the United States Supreme Court has explicitly rejected such a claim. The trial court erred in imposing a standard of proof of clear and convincing evidence.

## IV.

### Additional Procedures

◼ FWEA argues that the trial court erred in imposing procedures which it alleges are not constitutionally required. Specifically, it points to the requirement that a professional mediator conduct "adjustment proceedings" before arbitration and the requirement that all objections be "certified." The Teachers do not respond to this issue. Thus, we may reverse if FWEA establishes that *prima facie* error occurred on this issue. *Fisher v. Bd. of Trustees of Mt. Pleasant* (1986), Ind.App., 514 N.E.2d 626, 628.

The constitutional requirements for fair share fee determination are threefold: 1) an adequate explanation of the basis for the fee; 2) a reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker; and 3) an escrow for the amounts reasonably in dispute while such challenges are pending. *Hudson, supra*, at 310, 106 S.Ct. at 1078.

The fair share fee determination in the Fort Wayne system begins in the fall of each year, when each non-union teacher is sent a packet of information. The packet contains a memorandum describing the fair share procedure and the financial information on FWEA, ISTA, and NEA described above in part III of this opinion. The pack-

---

7. This information, not a required part of the basic financial statements, consists of a schedule of expenses, balance sheet for the current year to date, a statement of operations broken down by department, and a contingency fund schedule.

et also contains an options form giving teachers the opportunity (a) to pay the full amount of dues if the teacher does not object, (b) to pay a reduced amount which has been calculated by FWEA and ISTA, or (c) to pay nothing until a decision has been made by the arbitrator. If the teacher does nothing with the form, he or she is presumed to choose option (c).

Later in the year, ISTA contacts the American Arbitration Association (AAA) requesting an arbitrator. The AAA appoints an arbitrator, and notice is issued to non-union teachers advising them of the date, time and place of hearing, stating the issues to be considered, and inviting them to participate by letter or in person. A weekend meeting is scheduled so that teachers need not take a day off from teaching to attend the meeting. Once a decision is rendered, a copy of the award is sent to every non-union teacher, and the teacher is notified that a copy of the full opinion is available free of cost upon request. Arbitration is binding on the unions, but not on the teachers, who may challenge the calculation of the fair share fee in court. After arbitration is concluded, a letter is also sent to each objector advising them of the amount determined by the arbitrator and requesting payment within thirty days. The teachers are informed that if they do not pay, "it will be necessary to pursue the collection of the fair share through court."

These procedures fulfill the constitutional mandates outlined in *Hudson*. State and national union expenditures are broken down and noncchargeable expenditures are set out in each category and subcategory. Use of the local presumption for the local union is supported with audited financial statements. These provide an adequate explanation of the basis for the fee, allowing the objecting teachers to challenge the components of the fee calculation with particularity and ensuring that prohibited expenditures are not hidden from scrutiny.

A reasonably prompt opportunity to challenge the amount of the fee before an impartial decisionmaker is provided by the arbitration process. Reasonable conces-

sions are made to allow the objecting teacher to challenge the fee calculation through oral or written questions or testimony or by representation of counsel. The union takes no part in selecting the arbitrator, who is chosen by the AAA. The arbitration procedure survived a challenge to its constitutionality before the U.S. Court of Appeals for the Seventh Circuit in *Ping, supra.*

Finally, FWEA goes a step beyond that required by the constitution in its fee collection procedures. Rather than placing the fees in escrow pending arbitration, the objecting teacher need not tender any payment until thirty days after arbitration is concluded. Moreover, if the teacher does not state a position, he or she is assumed to object to payment of the fee and need not pay until after arbitration. This policy insures that fees are not used for political or ideological purposes repugnant to the non-union teacher before he or she is given the opportunity to challenge the union's method of calculation.

We agree with FWEA that the trial court erred in recommending additional procedures when it had before it a constitutional plan for the calculation and collection of fair share fees.

## V.

### Conclusion

In accordance with the foregoing, we conclude that the plan tendered by FWEA passed constitutional muster. In such a case, the trial court's role was to approve the plan and address the merits of the fee collection issue raised by FWEA's complaint.

> When the union's plan satisfies the standards established by *Hudson,* the plan should be upheld even if its opponents can put forth some plausible alternative less restrictive of their right not to be coerced to contribute funds to support political activities that they do not wish to support.

*Andrews, supra,* 829 F.2d at 340.

We reverse and remand to the trial court for the vacation of its Memorandum Orders

of November 27, 1989, January 10, 1991, and January 16, 1991, for a dissolution of its injunction to the extent that it prevents collection of fair share fees by FWEA pursuant to its proposal for collection of fair share fees tendered to the trial court on June 5, 1989, and for further proceedings consistent with this opinion.

HOFFMAN and MILLER, JJ., concur.